## 30241. WELCH v. THE STATE.

HALL, Justice.

On the evening of December 9, 1974, the Bay Service Station on Highway 23 in Gwinnett County was being operated by George West, manager, when West was approached by a stranger giving the name Joe Downs, who engaged West in a series of acts and conversations. Shortly after Downs' apparent departure, West noticed a man standing by a gas pump with a shotgun, wearing a ski mask and overcoat. This man threatened West and forced him to empty his pockets, thus producing a key to the cash drawer. He then ordered West to unlock the cash drawer, and subsequently forced West to drive West's automobile away from the station, with the armed man in the back seat. During these transactions, the Joe Downs figure drifted into and out of the arena of events, sometimes being ordered about by the armed man as if he were also a victim and sometimes disappearing from the scene apparently without the armed man's notice. Some distance down the road, approximately three-tenths of one mile, the armed man demanded from West the money from the cash drawer and was told that after unlocking the drawer West had left at the armed man's bidding and had not brought the money. The armed man was chagrined; West was nervous; the car ended up in the ditch and West escaped, running back to the station and the unlocked cash drawer from which somewhat more than $200 had by then disappeared. West had been gone approximately 15 minutes.

Appellant Welch was not the armed man but was the confessed driver of the get-away car, parked some distance away. He later told police that he waited there while two male companions, with whom he had planned the robbery of the station, went to perform the robbery. When the two of them came running back they thrust at him the ski mask, overcoat and shotgun, and told him to go bury them. When he left the automobile to do this, the other two drove off and left him, and he returned to the most convenient telephone which happened to be at the Bay Service Station. A policeman, investigating upon West's call, asked Welch to emerge from the booth and then asked if he could "help" him in any way, whereupon Welch blurted out a reference to the robbery and offered to lead officers to the shotgun. The officer then arrested Welch for armed robbery, and read to him the full Miranda warnings. Subsequently, Welch led officers to the mask, coat, and shotgun, and signed a statement detailing his part in the events. After a jury trial at which he was tried separately Welch was sentenced to nine years for kidnapping and nine years, to be served consecutively, for armed robbery.

1. On his appeal, Welch's first two enumerations of error concern only his conviction for armed robbery of the money from the cash drawer. He argues the general grounds and additionally urges that his motion for directed verdict on the armed robbery count should have been granted. He argues that the state produced no direct evidence of the identity of the person who actually took the money and the circumstantial evidence that it was one of Welch's co-conspirators (thus making Welch criminally responsible under Code Ann. § 26-801) is not adequate to exclude every other reasonable hypothesis. He argues that a passerby, or West himself, or the "Joe Downs" figure could have taken the money. We note that the record supports an inference that the man calling himself Joe Downs could have been the third conspirator. Since Welch admitted there were two others involved with him we think the jury were authorized to conclude that the third conspirator, who is otherwise unaccounted for, and who could have been Downs or another, took the money after West unlocked the drawer. See *Merino v. State,* 230

Ga. 604, 606 (198 SE2d 311). This circumstantial evidence meets the test of Code Ann. § 38-109, and this ground of the attack on the armed robbery conviction is without merit.

Welch's second argument against the armed robbery conviction is grounded in Code Ann. § 26-1902 stating that "A person commits armed robbery when, with intent to commit theft, he takes property of another *from the person or the immediate presence of another* by use of an offensive weapon." (Emphasis supplied.) Welch argues that since West was absent from the station for 15 minutes during which time the money was taken, the state failed to make out a taking from his "person" or "immediate presence."

One's "immediate presence" in this context stretches fairly far, and robbery convictions are usually upheld even out of the physical presence of the victim if what was taken was under his control or his responsibility and if he was not too far distant. There is a suprising absence of cases on this point, and we agree with Welch that perhaps the most pertinent Georgia case is *Clements v. State,* 84 Ga. 660 (11 SE 505) in which an armed robbery conviction was upheld where the victim was forcibly detained at his smokehouse while property was taken from his home some 15 feet away. Cases from other jurisdictions have extended the distance to more remote places. E.g., Fields v. State, 364 P2d 723 (Okla. Crim.) (victim was locked in refrigerated vault while money was taken from his automobile parked outside); People v. Moore, 13 Mich. App. 320 (164 NW2d 423) (victim was chased from his store, which was then robbed). Accord, Perkins, Criminal Law, 238 (1957). We think the language of the *Clements* decision plainly implies that a far greater distance than a mere 15 feet may be involved and robbery be sustained: "Suppose the defendants had found Bird on the front steps of his piazza and had carried him by force to this smokehouse and locked him therein, and had then gone back to his house and stolen his chest; could it be said that the taking was not in his presence? Suppose they had found him in his dining room, and locking him therein, had gone to the front room and taken the chest; would not that have been in his presence? Suppose the owner of

cattle is out in the pasture with them, when a man comes up and points a pistol at him, telling him to stay where he is. At the same time, confederates of the aggressor drive the cattle off from another part of the field. Would not that be a taking in the presence of the owner? Bishop, in his work on Criminal Law, Vol. 2, § 1177, says: 'The meaning of this legal phrase is, not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection that will suffice. Within this doctrine, the person may be deemed to protect all things belonging to the individual, within a distance, not easily defined, over which the influence of the personal presence extends.' In the case of Merriman v. The Hundred of Chippenham, 2 East P. C. 709, it was held that, where a wagoner was forcibly stopped in the highway by a man under fraudulent pretense that his goods were unlawfully carried for want of a permit, and while they were going to a magistrate to obtain the permit, the man's confederates took away the goods, this was sufficient proof of a taking to constitute robbery." 84 Ga., pp. 664, 665.

In any event, there is no direct evidence of West's location at the exact moment at which the money was taken, and the circumstantial evidence, viewed under Code Ann. § 38-109, authorized the jury to conclude that the taking by a co-conspirator occurred with such swiftness following the departure of West as unquestionably to constitute a taking from his immediate presence. The conviction for armed robbery was authorized; Welch was not entitled to a directed verdict under Code Ann. § 27-1802 (a); and Enumerations 1 and 2 are without merit.

2. "Under established Georgia law there is no necessity to give a charge on the subject of the voluntariness of a confession unless there is a specific request for it. [Cits.]" *Thomas v. State,* 233 Ga. 237, 241 (210 SE2d 675). Therefore, in the absence of a request, the trial court did not err in not charging Code Ann. § 38-411. Moreover, in light of the fact that this was not a case in which a confession was uncorroborated by any other evidence, and the fact that the voluntariness of the confession was properly determined as detailed below, no

harmful error could have flowed to Welch from the court's failure, without a request, to charge the substance of Code Ann. § 38-420.

3. Welch's last enumeration claims that "the court erred in failing to charge on the legal effect of being under the influence of alcohol when making a confession." There was no request for such a charge, nor does Welch state here what instruction he desired above and beyond those considered above. There was a Jackson v. Denno (378 U. S. 368) type hearing held out of the presence of the jury to consider the voluntariness of the confession, and the preponderance of the evidence presented there supported the trial court's determination that the confession was voluntary and Welch was not in any way incapacitated. Welch admitted signing the confession and the waiver, but testified that he had been drinking that day and only "vaguely" remembered talking to the officers. Before signing the written statement and the waiver form, Welch was twice given the Miranda warnings. The interrogating officer denied that Welch was drunk although he testified he could detect the smell of alcohol on him. He testified that Welch's speech was not slurred nor did he stagger nor show other evidence of intoxication or confusion. This enumeration is without merit.

*Judgment affirmed. All the Justices concur, except Ingram and Hill, JJ., who concur in the judgment only.*

SUBMITTED AUGUST 22, 1975 — DECIDED SEPTEMBER 23, 1975.

*Wynn Pelham,* for appellant.
*Bryant Huff, District Attorney, Dawson Jackson, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.