### A97A2075, A97A2076. CULVER v. THE STATE (two cases).
(496 SE2d 292)

JOHNSON, Judge.

Rodney Culver was tried on multiple felony charges involving six separate incidents described in two separate indictments involving different victims. A jury found him guilty of the following crimes related to the first indictment: three counts of burglary, four counts of rape, five counts of aggravated assault, three counts of possession of a knife during the commission of a crime, four counts of armed robbery, two counts of wearing a mask, robbery by force, three counts of kidnapping, aggravated assault with intent to rape, criminal attempt to commit aggravated sodomy, hijacking a motor vehicle, possession of a firearm during the commission of a crime, kidnapping with bodily injury, and two counts of aggravated sodomy. The jury also found him guilty of the following crimes related to the second indictment: burglary, rape, aggravated assault, kidnapping with bodily injury, and aggravated sodomy. In these two appeals, which we consider together, Culver asserts 19 enumerations of error. For the reasons set forth below, we affirm his convictions.

On appeal, the evidence must be viewed in the light most favorable to support the verdict, and the appellant no longer enjoys a presumption of innocence. See *Williams v. State*, 228 Ga. App. 698, 699 (1) (492 SE2d 708) (1997). So construed, the evidence presented at trial shows the following facts, which for clarity describe the six separate incidents involved in chronological order.

On October 2, 1993, between 6:00 and 6:30 a.m., an intruder entered the victim's room with a knife in his hand and woke her. The intruder, wearing a nylon mask, sliced the buttons off her shirt, kept the knife at her throat, and threatened to kill her. The victim's description of her attacker matched Culver's physical description. The victim pleaded for her children's safety as the intruder raped her on the bed. The intruder then dragged her to the floor, raped her again, and made her "play with him." The victim's face was covered with a pillow or blanket as the intruder left. The intruder took approximately $600 from the victim's purse. The victim identified a nylon hair cover found in Culver's house as similar to the one the

intruder wore. An expert testified that DNA analysis of semen from a towel found at the scene matched Culver and that the chance of finding another match was one in three billion.

On November 15, 1993, a second victim was working at a gas station convenience store. Culver had come into the store a few times before, but this time he came in shortly after 6:00 a.m. with a dark blue nylon stocking on his face. The victim's description matched Culver's physical characteristics. Culver grabbed her arm, twisted it behind her back, and forced her to give him money from the register. After taking the money, Culver dragged the victim across the floor, threw her into the stockroom, pinned her against the wall, and tried to pull her shorts down. The victim struggled with Culver, who punched her in the eye and knocked her unconscious. When she awoke, he was gone. The victim did not know her assailant's name until she saw his picture on television eight months later. She informed the police that Culver was her assailant, picked his picture out in a photographic lineup, and identified him in court as her assailant. On January 18, 1994, a third victim took her child into a daycare center and returned to her unlocked vehicle at 6:34 a.m. As she drove away, someone in the back seat hit her seat and shoved a gun against the side of her face. Her assailant spoke in a deep, raspy voice and told her where to drive and park. He grabbed her, pulled her into the back seat, made her take off her clothes, then pushed her down and tried to place his penis into her rectum. He covered her head with a mattress pad which was in the cargo area. Then he entered her vagina against her will, wiped her vagina when he had finished the act, and pushed her to the floor of the vehicle. He then pushed her out of the vehicle and drove away. She managed to grab her coat from the vehicle, and she ran to a nearby house, screaming she had been raped. The victim's description of her attacker matched Culver's physical characteristics.

One witness, who worked four doors from the daycare center, identified Culver in court and in a photographic lineup as the individual he saw near the daycare center around 6:00 a.m. on the morning of the rape. According to the witness, Culver looked "weird and dangerous." Another witness also identified Culver in court and in a photographic lineup as the individual she observed on several occasions near the daycare center a week before the rape. She testified that on one occasion, Culver had approached her car and frightened her.

Evidence of seminal fluid was found on a scarf found in the vehicle as well as on the floorboard of the vehicle. An expert testified that DNA analysis of sperm located on the scarf matched Culver and that the chance of finding another match was one in two billion. In addition, chances that semen recovered from the victim's cervix belonged

to someone other than Culver were one in six hundred thousand.

At 1:30 a.m. on July 30, 1994, the fourth victim was preparing to take a shower when she heard someone at her door. Although his face was covered, the victim's description of her attacker matched Culver's physical characteristics. He twisted her arm behind her back, forced her into another room and put a knife to her throat. The man ransacked her house and took coins, jewelry, including her wedding ring, and approximately $1,500 in cash. He then hit her in the face, rendering her unconscious. The victim testified she never had consensual sex with Culver, but his semen was found in her vagina.

The victim in this incident does not speak English well, and an interpreter on the scene informed the paramedics and the doctor who gathered the rape kit evidence that the victim indicated that she had been raped. She was treated for injuries to her arm. An expert testified that chances that semen recovered from the victim belonged to someone other than Culver were one in one billion.

On August 17, 1994, the fifth victim arrived at work at approximately 6:35 a.m., when a man caught the door behind her, grabbed her and held a knife to her. He grabbed her arm to control and move her, made her take off her clothes, and forced her to perform oral sex upon him. He then anally sodomized her for several minutes, then made her put his penis back in her mouth. Afterward, he put her on the floor and placed a smock over her head. The man performed oral sex on her briefly and forcibly raped her. He then stole her rings and money from her purse and left. The victim's description of her assailant matched Culver's physical characteristics. She picked out Culver from a photographic array and identified him in court as having an appearance similar to the person who raped her. She also identified a knife seized from Culver's vehicle as very similar to the one he held to her. An expert testified that DNA analysis of sperm found on the carpet on which the victim was raped matched Culver and that the chance of finding another match was one in ten billion.

On April 24, 1994, the sixth victim was awakened at 2:08 a.m. to find a man walking down her hallway toward her room. There were lights on throughout the house, and she described a man matching Culver's physical characteristics. She started screaming, and he told her to shut up and close her eyes. He had a deep voice. The man started choking her, then made her take her clothes off and covered her face. He touched her all over as she pleaded with him not to hurt her. He then raped her as she was on her back, made her perform oral sex on him, and raped her again from behind. After he ejaculated, he wrapped a gown around her head and forced her to walk around the house and give him money. The man then pushed her, kneed her in the back, choked her again, and left.

Sperm found on the bedspread where the victim was raped

matched Culver, and an expert testified that the chances of finding another match was one in ten thousand. At the state's request, an additional, possibly exculpatory, DNA test was conducted. However, this test also matched Culver, and evidence showed there is a one in one hundred thousand chance of this match occurring randomly.

The record shows that both a police detective and Culver himself testified as to Culver's physical characteristics at the time of his arrest and at the time of the attacks. Culver's work records indicated he was either late, not scheduled to work, or absent from work during time periods within which the six attacks occurred. In addition, all of the DNA evidence was reviewed by a defense expert, and none of it excluded Culver.

Culver presented alibi evidence at trial. Culver's mother testified that she did not recall specific dates, but that Culver was at home during the April 24, 1994 attack and might have been home or at his girl friend's during the July 30, 1994 attack. His mother also testified that at the time of the August 17, 1994 rape, she was taking Culver to work, but again acknowledged that she did not specifically recall the date.

Culver's girl friend testified that Culver was with her during the October 2, 1993 attack, and the November 15, 1993 attack. She was impeached with three certified copies of convictions against her as well as by evidence of her inconsistent testimony regarding dates and events.

Culver's third and fourth alibi witnesses, the mother of his child and her father could not testify to any specific dates.

1. In his first enumeration of error, Culver contends the trial court erred in denying his motion to suppress evidence because there was a lack of probable cause. Culver argues all evidence obtained as a result of the searches of his home, automobile and person, including his blood, should have been suppressed. We do not agree.

"On appeal of the denial of a motion to suppress, the evidence is to be construed most favorably to the upholding of the findings and judgments made. The trial court's findings must be adopted unless determined to be clearly erroneous." (Citations and punctuation omitted.) *Bickley v. State*, 227 Ga. App. 413, 414 (1) (a) (489 SE2d 167) (1997). Moreover, when reviewing an affidavit for a search warrant, we look at the totality of the circumstances to determine if there was probable cause to issue the search warrant. *Stewart v. State*, 217 Ga. App. 45, 46 (456 SE2d 693) (1995).

A brief summary of the overwhelming evidence that was contained in the affidavit submitted in support of the search warrant is as follows: (1) DNA tests conducted on semen samples obtained from two victims determined that one assailant raped both women; (2) Culver's characteristics, which matched each victim's description of

her assailant, were outlined in the warrant; (3) a witness identified Culver as the person she had seen two or three times in the vicinity of a daycare center where days later a woman was abducted and raped; (4) the victim of an assault at another southside daycare center identified Culver as the person most resembling her attacker; (5) during one assault, a purse stolen from the victim was found at 9 Royal Inn Court, and Culver resided at 12 Royal Inn Court; (6) Culver's work records indicated he could have been absent during the relevant time periods; (7) the assaults under investigation all occurred in 1993 and 1994 on the southside of Savannah, almost exclusively occurred in the early morning hours, involved theft of personal items from the victim, use of a weapon, and concealment of identity; (8) charges returned in a separate indictment contained similar facts to those of the first indictment, alleging Culver raped the victim, concealed his identity, and robbed the victim. DNA tests revealed the frequency of alleles shared between Culver and semen recovered from this victim as one in ten thousand; (9) in 1985 Culver abducted a victim using a stolen car, drove her to another location, and raped her; (10) also in 1985, Culver assaulted another victim while she was sleeping, and one of the victims of the rapes occurring in 1993 and 1994 was asleep in her bed when she was awakened by her assailant.

The information obtained from the victims, witnesses and investigators was sufficient for a determination by a reasonable person that a probability existed that Culver was the perpetrator. The totality of the circumstances and evidence collected was sufficient to find that there was a fair probability that a search of Culver's person, home and car would result in evidence of a crime, and therefore probable cause existed for the issuance of the warrant. See *Stewart*, supra. Although Culver contends the affidavit contained some erroneous information concerning his car and work schedule and may have omitted additional information, there was ample evidence supporting the validity of the warrant even assuming Culver's contentions are correct. Therefore, the trial court did not err in denying the motion to suppress.

2. Culver contends the trial court erred in denying his motion to sever the counts involving each of the different victims and should have given him separate trials for each victim. We find no merit in this assignment of error.

"Joinder is justified when the offenses are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. [Cits.]" *Bickley*, supra at 415 (3). The six separate incidents in these cases involved (1) attacks on the southside of Savannah in a ten-month period; (2) attempts by the intruder to conceal his identity either by covering his face, the victim's face, or

both; (3) assaults occurring in the early morning hours between 1:45 a.m. and 6:35 a.m.; (4) opportunity according to work records for Culver to have committed the crimes; (5) stolen property; (6) the use of violence; and (7) attacks when the victim was alone in all but one case. In addition, in nearly all the cases, the perpetrator raped or attempted to rape the victim from behind and used a weapon, usually a gun. Based on these facts, the incidents "reached the level of a pattern and . . . therefore constituted parts of a single scheme or plan." Id. The offenses were " 'so similar as to evidence a common plan or scheme and revealed an identical modus operandi.' [Cit.] Each would accordingly have been admissible to prove the other, and the trial court did not err in refusing to grant a severance. [Cit.]" *Jones v. State*, 168 Ga. App. 652 (1) (310 SE2d 17) (1983).

3. In his third enumeration of error, Culver maintains the trial court erred by allowing evidence of similar crimes committed against three other women. We disagree.

" 'In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. . . . There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.' [Cit.]" *Stine v. State*, 199 Ga. App. 898, 899 (2) (406 SE2d 292) (1991).

Similar transaction evidence showed that on March 17, 1985, a woman was abducted, beaten, and raped by Culver. Culver ran up behind his victim, hit her, threw her to the ground, and beat her until she was unconscious. Culver then placed her in a stolen taxi, drove until she managed to grab the wheel and crash the taxi, then raped her. After the rape, she ran from the car. When the cab was recovered, her purse and its contents were found strewn inside the cab. A certified copy of Culver's conviction for rape, kidnapping, and theft by taking an automobile in connection with this incident was admitted into evidence. A police captain testified that Culver gave an oral and written statement admitting that he committed the rape.

Evidence of the second similar transaction showed that on March 30, 1985, Culver broke into an apartment intending to steal a radio and rape the woman who lived there if she came home alone. The woman did come home, but her conversation with a friend frightened Culver away. A certified copy of Culver's conviction for criminal trespass was admitted into evidence. A police detective testified that Culver gave him a written statement that he had intended to rape the woman.

Evidence of the third incident offered as a similar transaction showed that around 6:30 p.m. on March 15, 1994, the owner of a daycare center was working late when she heard someone try to enter

the building through the front door. She went to the door and saw a man walking away toward the office building next door. Fifteen minutes later, she heard a noise in the area behind the center, saw the same man through the window, and went to call the police. By then the man had entered the building, put on a nylon mask and gloves and taken out a gun. He struck the victim in the face with the gun with such force that she required 13 stitches and plastic surgery. He dragged her by the arm through the lobby. He then grabbed her shirt, but she was able to slip out of her shirt and run from the building. The victim's description of her attacker matched Culver's physical characteristics. She picked out Culver's photograph in a photographic lineup and identified him in court. She also identified a nylon hair cover found in Culver's house as the mask her attacker was wearing at the time of the attack.

The trial court did not err in finding a sufficient similarity or connection between the prior independent crimes and the offenses charged. The facts common to the offenses at issue and the similar transactions showed bent of mind and a common scheme or modus operandi. Moreover, the rules regarding the use of similar transaction evidence are construed most liberally in cases involving sexual offenses. *Lumsden v. State*, 222 Ga. App. 635, 636 (1) (475 SE2d 681) (1996). "Thus, we cannot say that the trial court committed reversible error in implicitly finding that these facts provided a logical connection between the crimes which tended to prove the offense[s] charged rather than merely showing [Culver's] bad character. [Cit.]" Id. While Culver argues that two of the similar transactions are too remote in time to be admissible, he offers no case citation in support of his argument, and we have previously held that the lapse of time goes to the weight and credibility of such testimony, not to its admissibility. *Braddock v. State*, 208 Ga. App. 843, 844 (2) (432 SE2d 264) (1993).

4. In his fourth enumeration of error, Culver asserts the trial court erred in not granting a separate trial on the offenses charged in the second indictment. For the reasons set forth in Division 2, this enumeration lacks merit.

5. The trial court did not err by refusing to merge the aggravated assault with a deadly weapon offense into the rape offense as to the October 2, 1993 incident described in Counts 1-6 of the first indictment. According to Culver, the knife was only used during the course of the rape and then was placed beside the victim and was not used any further. However, the record shows that Culver used the knife to awaken the victim and then used the knife to slice the buttons off her shirt, an act unnecessary to accomplish the rape. These acts were separate and distinct acts of force and intimidation outside that necessary to accomplish the rape. Thus, the jury was authorized to find

Culver guilty of both rape and aggravated assault with a deadly weapon under the circumstances. See *Taylor v. State*, 202 Ga. App. 671 (415 SE2d 483) (1992); *Taylor v. State*, 177 Ga. App. 624, 628 (4) (340 SE2d 263) (1986).

6. There was sufficient evidence to support Culver's conviction of armed robbery as to the October 2, 1993 incident described in Counts 1-6 of the first indictment. The victim in that incident testified that when Culver stood up following the rape and aggravated assault, "I had something over my face, and I really couldn't see what he was doing, but he was there for a few minutes, and then he just left." During this time, Culver told her, "just stay there, you white bitch, or I'll kill you." The victim noticed after the rape that she was missing $600 from her purse. There was sufficient evidence from which the jury could infer that Culver stole the $600 from the victim's purse after the aggravated assault and rape.

In Georgia, the offense of armed robbery occurs when a person with intent to commit theft, "takes property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-8-41 (a). "Immediate presence" has been held to extend "fairly far," and robbery convictions are upheld even out of the physical presence of the victim. See *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975). While Culver argues that he could not be found guilty of robbery because the victim did not know that she was being robbed, citing *McNearney v. State*, 210 Ga. App. 582 (436 SE2d 585) (1993), this case is distinguishable.

In *McNearney*, the assailant suddenly snatched the victim's purse from her shopping cart while the victim was unloading her groceries. The victim was totally unaware of the occurrence. In this case, Culver had already removed a knife from the victim's kitchen, which he used during his aggravated assault and rape, he then told her to stay on the bed or he would kill her, and he remained in her house "a few minutes" before leaving. Clearly, a jury could find that the victim was aware that her life and personal property were at risk while Culver terrorized her and remained in her home.

Moreover, while the force used against the victim in the aggravated assault and rape did not occur concomitantly with the taking of the $600, Culver's acts and words may have created a reasonable apprehension on the part of the victim that an offensive weapon was being used during the robbery. See *Ramey v. State*, 206 Ga. App. 308, 309 (425 SE2d 385) (1992). Viewed in a light most favorable to support the verdict, the evidence was sufficient to authorize a rational trier of fact to find Culver guilty beyond a reasonable doubt of armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

7. The trial court did not err by refusing to merge the aggravated

assault with a deadly weapon offense into the armed robbery offense as to the October 2, 1993 incident described in Counts 1-6 of the first indictment. As in Division 6 above, the jury was authorized to find Culver guilty of both armed robbery and aggravated assault with a deadly weapon under the circumstances. *Welch*, supra; *Ramey*, supra.

8. The trial court did not err by refusing to merge the aggravated assault with a deadly weapon offense into the armed robbery offense or by refusing to merge the aggravated assault with a deadly weapon offense into the rape offense as to the January 18, 1994 incident described in Counts 12-18 of the first indictment. The record shows that Culver struck the back of the victim's seat and shoved a gun against the side of her face as she drove her vehicle from the daycare center. While there was no further testimony regarding the gun, the jury was authorized to conclude that Culver maintained control of the gun throughout the ensuing events. See generally *Hughes v. State*, 185 Ga. App. 40 (363 SE2d 336) (1987). After assaulting the victim with the gun, Culver ordered her to drive to and stop at a certain location. He then physically pulled her into the back seat and raped her. Culver then shoved her out of the vehicle and drove away. Each offense, the aggravated assault with a deadly weapon, the rape, and the armed robbery, was separate and distinct with independently supporting facts. Consequently, the offenses did not merge. See *Rhodes v. State*, 221 Ga. App. 792, 795-796 (8) (470 SE2d 790) (1996).

9. The trial court did not err by refusing to merge the aggravated assault with a deadly weapon offense into the armed robbery offense as to the July 30, 1994 incident described in Counts 19-24 of the first indictment. The record shows that after Culver dragged the victim from room to room at knifepoint, taking items from her safe and purse, he dragged her to the living room and knocked her unconscious. A rational trier of fact could reasonably have concluded that Culver assaulted the victim with the knife after the robbery was completed as well as during the course of the robbery. See *Holmes v. State*, 205 Ga. App. 168, 169 (2) (421 SE2d 311) (1992).

10. The evidence was sufficient to support Culver's conviction for kidnapping with bodily harm in the July 30, 1994 incident referred to in Division 9 above. In Georgia, the offense of kidnapping occurs when an offender "abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a). Any physical injury, however slight, constitutes the requisite bodily harm within the meaning of the statute. *Green v. State*, 193 Ga. App. 894, 896 (1) (389 SE2d 358) (1989). The victim testified that Culver hurt her when he twisted her arm behind her back. In addition, a paramedic testified that when she arrived at the

scene, she found the victim clutching her right hand, and she noted that the victim's wrist was swollen and red.

11. The evidence was sufficient to support a conviction for armed robbery in the case involving the August 17, 1994 incident described in Counts 25-32 of the first indictment, and the trial court did not err by refusing to merge the aggravated assault with a deadly weapon offense into the armed robbery offense in these counts. Viewed in a light most favorable to support the verdict, the evidence shows that Culver attacked, raped and sodomized the victim at knifepoint, then left her on the floor with her head covered. Although she did not actually see Culver remove the money and jewelry from her purse after the rape, she heard Culver go through her wallet nearby and feared he would take her rings. In addition, while the victim could not see the knife as she heard Culver go through her wallet, the jury was authorized to conclude that Culver maintained control of the knife after the aggravated assault was completed and during the commission of the robbery. See *Ramey*, supra. The jury was also authorized to find that Culver's acts created a reasonable apprehension on the victim's part that an offensive weapon was being used, since she testified that she believed Culver was going to kill her after he took the money from her wallet.

As in Division 6 above, this evidence was sufficient for a rational trier of fact to find Culver guilty beyond a reasonable doubt of committing armed robbery upon the victim. *Jackson*, supra; *Welch*, supra; *Ramey*, supra. Furthermore, the jury was authorized to find Culver guilty of both armed robbery and aggravated assault with a deadly weapon under the circumstances, so the trial court did not err by refusing to merge the two offenses. *Welch*, supra; *Ramey*, supra.

12. The evidence was sufficient to support a conviction for kidnapping with bodily harm in the April 24, 1994 incident described in the second indictment. The record shows that after raping her twice and forcing her to commit oral sodomy, Culver wrapped the victim's nightgown around her head and forced her to walk to another room with his hands around her shoulder and neck. He then took her back to the spare bedroom, "put his knee like on my back and had his hand like on my neck, and just pushed me down" before he left. The victim testified that these actions hurt her. She further testified that Culver choked her after raping and robbing her before he left the house. See *Jackson*, supra; *Green*, supra.

13. The trial court did not err by refusing to merge the aggravated assault with intent to rape offense and the aggravated assault by use of hands and fists offense as to the November 15, 1993 incident described in Counts 7-11 of the first indictment. The record shows that after assaulting and robbing the victim, Culver dragged her to the stockroom, closed the door, pinned her against the wall

and attempted to pull her shorts down. According to the victim, she managed to open the door and get to her feet, at which point Culver struck her left eye with his right fist. When she regained consciousness, Culver had disappeared. Based on this evidence, a jury was authorized to find that more than one assault occurred. "The [aggravated assault with hands and fists] was a sequential reaction to the victim's resistance to the charged sexual assault. [Cits.]" *Watson v. State*, 178 Ga. App. 778, 781 (2) (344 SE2d 667) (1986) (physical precedent only). Hence, the trial court's failure to rule that the offenses merged was not error.

14. In his sixteenth enumeration of error, Culver contends the trial court erred in denying his motion for change of venue. This motion was based on the amount of publicity generated by the news media. After voir dire, the trial judge denied Culver's motion, noting his surprise at the lack of juror knowledge of the offenses considering the news media coverage.

The trial court has the discretion to grant a change of venue, and its determination will not be disturbed absent an abuse of discretion. *Chancey v. State*, 256 Ga. 415, 430 (5) (349 SE2d 717) (1986). "In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." (Citations and punctuation omitted.) *Meeks v. State*, 216 Ga. App. 630, 633 (5) (455 SE2d 350) (1995). Culver has failed to demonstrate any prejudice. In fact, Culver's attorney admitted after voir dire that he "thought there'd be a lot more publicity generated, there'd be more prejudice. But there wasn't." In addition, Culver admitted in his brief that "[a]lthough there had been extensive publicity about the case, most jurors seemed to be unaware of the case." The trial court did not abuse its discretion in denying Culver's motion for change of venue. See *Jones v. State*, 267 Ga. 592, 594 (1) (a) (481 SE2d 821) (1997).

15. Culver next asserts the state failed to prove venue as to the July 30, 1994 incident described in Counts 19-24 of the first indictment. According to Culver, the state only established that the offenses against the victim took place in Savannah, and not in any particular county. We disagree.

Viewing the evidence in a light most favorable to support the jury's verdict, the record shows that the victim testified that she lived at 111 Greenbriar Drive, Savannah, Georgia. There is no dispute the offenses occurred at her residence. A police detective with the Savannah Police Department identified the victim's residence on a map and testified that her residence was within Chatham County. This proof is sufficient to authorize the jury's finding, beyond a reasonable doubt, that these crimes occurred in Chatham County and that

venue was proper there. See *Jackson,* supra; *Hall v. State*, 226 Ga. App. 298 (1) (485 SE2d 800) (1997).

16. Culver contends the trial court erred in allowing the state to introduce evidence of sexually explicit magazines found during the search of his residence. According to Culver, the admission of these magazines wrongfully placed his character into evidence.

Culver was charged with numerous sex-related crimes, including five counts of rape, three counts of aggravated sodomy, criminal attempt to commit aggravated sodomy, and aggravated assault with intent to rape. Where a defendant charged with sex crimes seeks to exclude from evidence material offered for its sexually explicit nature, the issue "is whether the evidence sought to be excluded by the defendant is admissible to show defendant's bent of mind toward the *sexual activity with which he was charged* or defendant's *lustful disposition.* [Cits.]" (Emphasis in original.) *Helton v. State*, 206 Ga. App. 215, 216-217 (424 SE2d 806) (1992). Moreover, "[i]f there is any question about it, it is a well established rule of law that the rules of evidence require that the evidence be admitted and its weight and effect left to the jury." (Citations and punctuation omitted.) Id. at 217.

Culver acknowledges the above-stated principle of law, but argues that the prejudice outweighs the evidentiary value of the magazines. Culver, however, fails to specify how he was prejudiced. Accordingly, we cannot find that the trial court abused its discretion in allowing the state to introduce the sexually explicit magazines into evidence.

17. In his final enumeration of error, Culver contends the evidence was insufficient to convict him of all crimes charged in both indictments. Viewing the evidence in a light most favorable to support the verdict, we find the evidence was sufficient to authorize a rational trier of fact to find Culver guilty beyond a reasonable doubt of all charges against him. See *Jackson,* supra.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 16, 1998

*Mark J. Nathan*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ian R. Heap, Jr., Assistant District Attorney, Thomas M. Cerbone*, for appellee.