A99A0481. SANDERS v. THE STATE.
(512 SE2d 678)

ELDRIDGE, Judge.

Appellant Ernest E. Sanders challenges his convictions for two counts of armed robbery and one count of burglary. We affirm.

"On appeal[,] the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State,* 195 Ga. App. 463, 464 (393 SE2d 737) (1990); see also *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Viewed in such light, the evidence shows that, on January 4, 1996, Ernest Powell arrived at his home in Oglethorpe, Georgia, and found his furnishings and possessions in disarray. Moments later, he heard noises in the back of the home, and when he walked back there, he was confronted by Sanders, who was pointing a handgun directly at Powell's face. Sanders cursed at Powell and grabbed Powell's gold chain necklace. As Powell "swung at him," Sanders fell out the door, then got up and ran away. Powell pursued Sanders and soon saw Sanders at the home of Gladys Baldwin, Sanders' aunt. Powell went to the Oglethorpe police station, and a police officer drove Powell to Baldwin's home. While Powell was still in the police vehicle, he identified Sanders as the robber. The officer approached Sanders, and before he could tell Sanders why he was

there, Sanders pointed to the vehicle and spontaneously said "I haven't done anything to that m__ f__." Sanders then attempted to flee, but was apprehended, arrested, and charged with burglary and armed robbery. The trial court appointed Donald Lamberth to serve as his attorney. Lamberth arranged for bail, and Baldwin bailed Sanders out on January 11, 1996.

A few days later, while Sanders was out on bail on the first armed robbery, Sanders again was at Baldwin's home when Harold Hankerson stopped by. As Hankerson left a short while later, he saw someone running toward him on the street. Hankerson realized it was Sanders. Sanders pointed a handgun at Hankerson's head, grabbed his wallet, and demanded "Give it up." Hankerson, who was armed with his own handgun, gave Sanders his handgun. Sanders ran back to his aunt's home. Hankerson reported the incident to police officers, who arrested Sanders shortly thereafter. Sanders was indicted on one count of armed robbery. Lamberth was again appointed as Sanders' attorney and represented Sanders on both armed robberies. Lamberth discussed the cases with Sanders on several occasions, participated in discovery, and interviewed witnesses.

Although the record is conflicting, it shows that sometime in the months prior to trial, Sanders' mother arranged for another attorney, Henry Williams, to represent Sanders on one or both of the charges. However, due to a fee dispute, Williams withdrew from the cases on July 1, 1996, and Lamberth renewed his representation on both cases at least two weeks before the trial calendar. Both cases were listed separately on the August 27, 1996 trial calendar. At the urging of the district attorney, the trial court joined the cases for trial. Lamberth had not been aware of the State's intention to join the cases and objected to the joinder, but his objection was overruled.

Lamberth represented Sanders during the jury trial, which was conducted the same day, August 27, 1996. Sanders was convicted on all counts. He filed a motion for new trial, which was denied. This appeal follows. *Held*:

1. In his first enumeration of error, Sanders claims that the trial court erred when it overruled his objection[1] to the decision to join the armed robbery charges. We disagree.

(a) Joinder of offenses is allowed when two or more offenses (1) have the same or similar character, even though they are not part of

---

[1] Although defense counsel did not move for severance prior to trial, it is undisputed that he objected to joinder of the charges when he learned, during the calendar call on the day of the trial, that the trial court intended to try both of the indictments jointly before the same jury. Accordingly, for the purpose of this appeal, we will treat such objection as a motion to sever. See *Kelly v. State*, 209 Ga. App. 789, 792 (2) (434 SE2d 743) (1993); *Langston v. State*, 195 Ga. App. 873-874 (2) (395 SE2d 74) (1990).

a single scheme or plan; (2) are based on the same conduct; (3) are based on a series of connected acts; or (4) constitute parts of a single scheme or plan. *Davis v. State*, 223 Ga. App. 346, 348 (477 SE2d 639) (1996); see also OCGA § 16-1-7 (b). The Supreme Court has held that, because of the great risk of the "smear effect," i.e., prejudice from the joint disposition of unrelated charges, a defendant has an absolute right, upon proper motion, to have offenses severed for trial "where the offenses have been joined *solely* on the ground that they are of the same or similar character." (Emphasis supplied.) *Carter v. State*, 261 Ga. 344 (1) (404 SE2d 432) (1991), citing *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975). See also *Davis v. State*, supra at 349. However, "[o]ffenses are not joined *solely* because they are of the same or similar character where the similarity reaches the level of a pattern evincing a common motive, plan, scheme or bent of mind." (Citations and punctuation omitted; emphasis in original.) *Whitfield v. State*, 217 Ga. App. 402, 403 (1) (457 SE2d 682) (1995).

In this case, Sanders was charged with two separate counts of armed robbery, as well as one count of burglary. Both armed robberies occurred within 16 days of each other; in fact, the second armed robbery occurred only days after Sanders was released on bond for the first armed robbery. The offenses occurred in the same neighborhood, only blocks apart. In both cases, the defendant surprised the victims, who knew or previously had seen the defendant. Sanders pointed a handgun at their heads, suddenly snatched their valuables, and then ran to his aunt's home. Accordingly, as the charges were not joined *solely* because of their similar nature, i.e., the fact that they were both armed robberies, Sanders was not automatically entitled to severance of the charges.

(b) When charges are joined for reasons *in addition to* their similar character, the trial court has the discretion to grant a motion for severance. In exercising this discretion, the trial court "should consider whether[,] in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." (Citations and punctuation omitted.) *Davis v. State*, supra at 349. See also OCGA § 16-1-7 (c).

As to whether the trial court abused its discretion in joining these cases, the record shows that there was sufficient evidence for a rational factfinder to find Sanders guilty of each individual charge beyond a reasonable doubt. See *Jackson v. Virginia*, supra. Further, "the crimes were simple, involved only one defendant and one victim each time, . . . the court clearly charged the jury to consider each charge separately[,] . . . and the jury announced its verdict on each count separately. There was nothing complex about these two offenses such as could make it difficult for the trier of fact to distin-

guish the evidence and apply the law intelligently as to each offense. Lastly, the risk of prejudice ('smear effect') from this joint disposition was minimal." (Citations and punctuation omitted.) *Davis v. State,* supra at 349. "The evidence of [either act] could have been introduced at the trial of [the other], which negates any claim that [Sanders] was impermissibly prejudiced by the trial of the charges together. [Cits.]" *Owens v. State,* 213 Ga. App. 693, 694 (4) (445 SE2d 818) (1994), citing *Williams v. State,* 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). The trial court did not abuse its discretion in joining the cases in a single trial.

2. In his second enumeration of error, Sanders claims that he was denied effective assistance of counsel. " 'In order to establish ineffectiveness of trial counsel under *Strickland v. Washington,* 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy.' (Citations and punctuation omitted.) *Stephens v. State,* 265 Ga. 120, 121-122 (453 SE2d 443) (1995). See also *Hudson v. State,* 218 Ga. App. 671, 672 (462 SE2d 775) (1995). In order to rebut this presumption, appellant must show that 'counsel's representation fell below an objective standard of reasonableness. (Cit.)' *Knight v. State,* 266 Ga. 47, 48 (4) (464 SE2d 201) (1995). 'The trial court's ruling that counsel's performance did not fall below an objective standard of reasonableness and that (appellant) failed to show a reasonable probability that the result would have been different but for the alleged errors must be upheld unless those findings are erroneous.' *Harris v. State,* 268 Ga. 412-413 (490 SE2d 96) (1997)." *Smith v. State,* 234 Ga. App. 586, 588 (1) (506 SE2d 406) (1998).

In support of this enumeration, Sanders asserts that Lamberth should have known that the cases would be joined for trial and implies that Lamberth should have filed a written motion to sever. However, Sanders does not show how Lamberth could have anticipated the State's decision to recommend joinder or why such failure to anticipate joinder was unreasonable under the circumstances. Nor can Sanders demonstrate any harm from Lamberth's failure to anticipate such joinder or make such motion, since a motion to sever would have been properly denied pursuant to our decision in Division 1, supra.

Although Sanders also asserts that Lamberth should have subpoenaed witnesses as to the January 4, 1996 charges, he does not

show that there is *anyone* who could or should have been called to testify on his behalf concerning the January 4 incident. Lamberth testified at the motion for new trial hearing that he attempted to interview two individuals who, according to information he received from Sanders, might have been able to testify on Sanders' behalf. However, when questioned by the trial court during the hearing, Sanders refused to explain to the court what, if any, evidence these witnesses may have been able to provide as to the January 4 incident. Further, Lamberth testified that he decided not to call these witnesses because of their "reputation." Lamberth testified that he was not aware of any other witnesses who could have been called regarding the first offense.

Finally, Lamberth testified at the hearing on Sanders' motion for new trial that he was familiar with the facts of both indictments; had had numerous discussions with both Sanders and Williams concerning the charges; and had a discovery package on both indictments.

Accordingly, Sanders has failed to demonstrate that trial counsel's performance was deficient or that the outcome of his trial would have been different but for counsel's actions.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 19, 1999.

*Mark S. Martin*, for appellant.
*John R. Parks, District Attorney, Henry O. Jones III, Assistant District Attorney*, for appellee.