## A00A2423. TANKSLEY v. THE STATE.
(545 SE2d 652)

JOHNSON, Presiding Judge.

A jury found Eugene Tanksley guilty of armed robbery, hijacking a motor vehicle, aggravated assault, possession of a firearm during the commission of a crime and theft by taking. He challenges the convictions entered on the verdict, claiming the trial court erred in denying his motion to try the charges related to each of the three incidents separately, in allowing the prosecutor to cross-examine him about the veracity of a witness and in charging the jury on an inapplicable principle of law. Because none of these arguments presents grounds for reversal, we affirm the convictions.

Viewed in a light most favorable to the verdict, the evidence

---

shows that on Saturday, August 23, 1997, a woman sat in her car in a convenience store parking lot while her boyfriend went inside the store. Four men in a gray car pulled into the parking lot. Tanksley, whom the woman knew, got out of the car and jumped into her car. He snatched her purse, and when she tried to snatch it back, Tanksley told her "don't make me pull out my pistol." He got back into his own car and remained in the parking lot, cursing at the victim. The victim got out of her car to use the pay phone to call police, and, as her boyfriend stood with her, Tanksley remained where he was. Tanksley eventually drove away.

A few hours later, a different victim drove his car through a retail store parking lot. He and his girlfriend were "cruising" through the parking lot, as were many other people. Tanksley, whom he knew as "Cheeto," drove his car toward the victim's car and partially blocked him in. Tanksley told the victim, "I'll hit your s—." The victim told Tanksley to go on past. As Tanksley proceeded past, he scraped the victim's car. The victim did not want any trouble and told his girlfriend not to worry about the damage to the car. Tanksley began bragging to the victim about how he hit the victim's car, then asked, "Now what?" The victim asked Tanksley why it had "to be like that?" Tanksley grabbed a rifle from under the car seat, asked his passenger to hand him a gun clip and came toward the victim and his girlfriend. He told the victim, "I'll kill you." The victim and his girlfriend jumped out of the car and ran. Tanksley pointed the gun at other people in the parking lot, then drove the victim's car away.

At 10:00 p.m., on September 10, 1997, an argument broke out between two groups of people in a residential area. A man driving a gray car slowly passed the people three times. A second man was in the car with him. Tanksley's sister remarked, "There go Cheeto, let's get this started." Tanksley stepped out of the car, drew a large gun and fired shots into the air. As people started running, he began shooting at them. When it was over, five people had been shot.

1. According to Tanksley, the charges arose from three distinct incidents and they were improperly joined for trial.[1] We hold that the trial court did not abuse its discretion in joining the offenses for trial.

When charges have been joined for trial solely on the ground that they are of the same or similar character, severance is mandatory; if they are joined for other permissible reasons, however,

---

[1] Regarding the first incident, Tanksley was charged with robbery by force or intimidation. The second incident resulted in charges of armed robbery (related to the car theft), hijacking a motor vehicle, aggravated assault (of the driver's girlfriend) and possession of a firearm during the commission of certain crimes (armed robbery, hijacking a vehicle and aggravated assault). As for the third incident, he was charged with five counts of aggravated assault and possession of a firearm during the commission of certain crimes (aggravated assault).

the trial court has discretion on the issue of severance.[2] Offenses are of the same or similar character if, for example, they are both armed robberies or both drug offenses.[3] Offenses are not joined *solely* because they are of the same or similar character where the similarity reaches the level of a pattern evincing a common motive, plan, scheme or bent of mind.[4]

In all of the charged offenses, Tanksley used or threatened to use a gun; he used his car during the commission of each of the crimes; all incidents took place outside in public places, where there were groups of people present; in all of the incidents, the witnesses and victims knew Tanksley; in each of the incidents, Tanksley had a companion with him in his car; in the first and second incidents, Tanksley took the victims' property; in all of the incidents, Tanksley engaged in conduct which drew attention to himself, such as yelling at his victims in public and driving slowly and repeatedly through crowds; Tanksley made no apparent effort to conceal his identity in any of the incidents and all of the incidents occurred at night, within a three-week period. Based on these facts, the incidents reached the level of a pattern and were so similar as to evidence a common bent of mind.[5] The trial court did not abuse its discretion in denying Tanksley's motion to sever the offenses.

2. According to Tanksley, the trial court erroneously permitted the prosecutor to ask him to comment upon the veracity of another witness.

During direct examination, Tanksley testified that he was not present when the third incident occurred at 10:00 p.m. He stated that he and his girlfriend were at his house until 11:00 p.m., that they left for her house on bicycles and that they spent the rest of the night at her house. On cross-examination, the prosecutor asked Tanksley: "So, if [your sister] told [the detective] that you left your home about 1:00 or 2:00 a.m., she would be lying?" Tanksley replied: "I guess so."

In general, it is improper for counsel to ask one witness if another witness is lying, as a witness' veracity is a matter to be determined by the jury.[6] However, we fail to see how the prosecutor's question violated this principle. The question merely emphasized a

---

[2] *Parker v. State*, 242 Ga. App. 10, 11 (1) (528 SE2d 530) (2000).

[3] See *Mangrum v. State*, 244 Ga. App. 559, 560 (536 SE2d 217) (2000); *Sanders v. State*, 236 Ga. App. 578, 580 (1) (a) (512 SE2d 678) (1999).

[4] *Sanders*, supra; see *Scroggins v. State*, 237 Ga. App. 122, 123 (3) (514 SE2d 252) (1999).

[5] See *Byrd v. State*, 236 Ga. App. 485, 487 (4) (512 SE2d 372) (1999); *Culver v. State*, 230 Ga. App. 224, 228-229 (2) (496 SE2d 292) (1998).

[6] *Roberson v. State*, 241 Ga. App. 226, 227 (1) (526 SE2d 428) (1999) (physical precedent only); *Tucker v. State*, 228 Ga. App. 321, 324 (2) (491 SE2d 420) (1997).

conflict in the evidence, which was the jury's duty to resolve.[7]

Moreover, even assuming the trial court erred in allowing the question, Tanksley has not shown how the question harmed him. In light of the overwhelming evidence placing Tanksley at the scene and identifying him as the shooter, it is not likely that this question regarding his alibi contributed to the verdict.[8]

3. Tanksley complains that the trial court included in its jury charge the statement that the jury was "not bound to believe testimony as to facts incredible, impossible, or inherently improbable." He urges that this charge should be given only in extraordinary cases, where there is testimony which runs "contrary to the great physical laws of the universe."[9] This case, he says, is not one of those cases. This argument presents no grounds for reversal.

When the trial court asked if there were exceptions to the charge, defense counsel replied that he had none, except on one unrelated matter. He neither made any objection to the charge on the grounds urged on appeal nor reserved any exceptions to the court's jury charge. Such silence waives the right to raise the issue on appeal unless there has been a substantial error which was harmful as a matter of law.[10] Assuming that the court's charge was inapplicable here, our task is to determine whether it was harmful error.[11]

At trial, numerous victims and witnesses who knew Tanksley testified that they saw him commit the crimes with which he was charged. In light of the overwhelming evidence against Tanksley and considering the charge in its entirety, we cannot say that any error regarding this particular instruction was sufficiently prejudicial to deprive him of a fair trial or to have caused a gross miscarriage of justice.[12] Accordingly, Tanksley's failure to preserve the error constitutes a waiver of the issue.[13]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 16, 2001.

*Peter D. Johnson*, for appellant.

---

[7] See *Tucker*, supra.

[8] See id.; see generally *Dorsey v. State*, 259 Ga. 809 (3) (387 SE2d 889) (1990) (no error in allowing state to ask defendant if "everybody's lying" except him).

[9] For a discussion of this charge, see *Brandon v. State*, 241 Ga. App. 887, 888-889 (2) (528 SE2d 809) (2000).

[10] *Wiser v. State*, 242 Ga. App. 593, 594 (1) (530 SE2d 278) (2000); see generally *Clark v. State*, 187 Ga. App. 232, 234 (4) (369 SE2d 550) (1988).

[11] Id.

[12] See *Hunley v. State*, 227 Ga. App. 234, 235 (1) (488 SE2d 716) (1997).

[13] See id.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.