A04A2018. DAILEY v. THE STATE.
(610 SE2d 126)

SMITH, Presiding Judge.

Michael Dailey was charged by indictment with two counts of armed robbery stemming from two hotel robberies.[1] The jury found him guilty on one count of armed robbery and acquitted him on the other charge. After entry of judgment, Dailey's out-of-time motion for new trial was denied, and he brings this appeal. Dailey raises three enumerations of error, challenging the sufficiency of the evidence and contending that the trial court erred in denying his motion to sever

---

[1] One count of kidnapping and a charge of attempted armed robbery were nolle prossed by the State because the victim was unavailable for trial.

the offenses and in admitting the testimony of the State's fingerprint expert. Finding no error, we affirm.

Construed to support the jury's verdict, the evidence presented at trial showed that on August 9, 2000, at approximately 8:00 p.m., Dailey entered the Drury Inn in Cobb County and sat in the lobby near a complimentary coffee cart. Dailey then approached the front desk, stood "pretty much" directly in front of front desk clerk Mark Gibson, and requested a new room key. When he was asked for identification, he presented a note saying "Give me your money now," which was hand-printed on one of the hotel's customer satisfaction survey cards. Such cards were found in the hotel's guest rooms, at the front desk, and on tables in the hotel's lobby and coffee area.

At first, Gibson and other employees thought Dailey might be joking, but when Dailey showed what appeared to be a "chrome pistol" and demanded money, they quickly realized that it was a robbery. They emptied the cash register, and Dailey took the money and fled, leaving behind the note. Gibson described the man who had robbed him as a stocky, "not quite 6-foot" African-American wearing a dark hooded sweatshirt.

The note was checked for fingerprints, and a fingerprint expert with the Cobb County Police Department testified that using the Automated Fingerprint Identification System (AFIS), he matched a fingerprint on the note to a known fingerprint belonging to Dailey. The expert then confirmed the match manually by comparing Dailey's fingerprints with the fingerprints on the note. Subsequently, Gibson was shown a photographic lineup. He positively eliminated four and indicated that two of the six photographs "looked familiar" and might be the man who had robbed him. Dailey's photograph was one of the two "possibilities."

On September 24, 2000, the Bradbury Suites Hotel, located about a mile away from the Drury Inn, was robbed in a similar manner, by a black man wearing a hooded sweatshirt. This time, however, the desk clerk and Dailey recognized each other because they had met at another hotel where Dailey was once employed as a front desk clerk. The Bradbury Suites desk clerk testified that a man with a silver-colored handgun accompanied Dailey. After taking the money, the robbers fled. The desk clerk identified Dailey positively from a photographic lineup.

1. We first address Dailey's contention that the trial court should have granted his motion for new trial because the evidence presented at trial was insufficient to support the jury's verdict of guilty as to the robbery of the Drury Inn. Dailey states that because there was no in-court identification and the photo lineup was inconclusive, the fingerprint evidence derived from the robbery note was "the only inculpatory evidence against" him. He then argues that this evidence

was circumstantial and that it was insufficient to prove his guilt beyond a reasonable doubt, given that he presented a reasonable explanation for his fingerprints' presence on the note.

Dailey is, of course, correct in pointing out the requirements of OCGA § 24-4-6. To obtain a conviction on circumstantial evidence, that statute requires the State to prove that the facts not only are consistent with the hypothesis of guilt, but that they exclude every other reasonable hypothesis. But

> [t]o support a verdict, circumstantial evidence need exclude only reasonable hypotheses, not exclude every inference or hypothesis except that of the defendant's guilt. Whether circumstances were sufficient in this case to exclude every reasonable hypothesis except that of [the defendant's] guilt was a question for the jury.

(Citation and footnote omitted.) *Howard v. State,* 263 Ga. App. 593, 595 (1) (b) (588 SE2d 793) (2003).

Here, the fingerprint evidence was not the only inculpatory evidence; other evidence corroborated the fingerprint match. Although Gibson was not absolutely certain of his identification of Dailey, he did eliminate from consideration the photographs of four other individuals shown to him, leaving Dailey as one of two individuals in the lineup who possibly committed the crime. Gibson's description of the man who robbed him matched Dailey's appearance. In addition, although the jury did not find Dailey guilty of the Bradbury Suites robbery, the victim in that similar robbery positively identified Dailey as having robbed him.

Also, the jury could certainly have found that Dailey's "explanation" was not reasonable. Dailey did not testify in his own defense. A witness called by Dailey testified that she and Dailey visited the Drury Inn several weeks before the date of the robbery to meet a friend. They sat in the lobby area, where Dailey handled cards that were on the tables, "building a pyramid with them." But this witness was shown State's Exhibit 1, the card on which the robbery note was hand-printed, and she was asked whether the cards Dailey had played with resembled the exhibit. She responded: "I didn't see him with anything like that," thereby completely undermining Dailey's "explanation."

Viewing all the evidence presented, the jury easily could have concluded that Dailey's "explanation" was not reasonable, and the evidence was sufficient to authorize the jury to find Dailey guilty of the Drury Inn robbery.

2. Dailey contends the trial court erred in denying his motion to sever the offenses, arguing that the two robberies were different and not part of a common plan. We do not agree.

We review this enumeration under an abuse of discretion standard. Joinder is within the discretion of the trial court when offenses:

> (1) have the same or similar character, even though they are not part of a single scheme or plan; (2) are based on the same conduct; (3) are based on a series of connected acts; or (4) constitute[d] parts of a single scheme or plan. The Supreme Court has held that, because of the great risk of the "smear effect," i.e., prejudice from the joint disposition of unrelated charges, a defendant has an absolute right, upon proper motion, to have offenses severed for trial where the offenses have been joined *solely* on the ground that they are of the same or similar character. However, offenses are not joined *solely* because they are of the same or similar character where the similarity reaches the level of a pattern evincing a common motive, plan, scheme or bent of mind.

(Citations and punctuation omitted.) *Sanders v. State*, 236 Ga. App. 578, 579-580 (1) (a) (512 SE2d 678) (1999).

The two armed robberies[2] occurred within a short period of time, both occurred at hotels in Cobb County, and both victims were hotel desk clerks. The same general description of Daily was given by the victims in both cases. In both instances, the robber wore a head covering and sunglasses and covered the lower portion of his face. These similarities demonstrate a common plan or scheme.

In exercising its discretion, the trial court was required to consider whether the jury would "be able to distinguish the evidence and apply the law intelligently as to each offense," given the number of offenses and the complexity of the evidence. (Citations and punctuation omitted.) *Sanders*, supra, 236 Ga. App. at 580 (1) (b). In this case, only two incidents were involved, and, as in *Sanders*, there was nothing complex about the two robberies. Moreover, either crime could have been introduced at a separate trial of the other as a similar offense, making the prejudice generated by the joint trial minimal. Id. at 580-581. The trial court therefore did not abuse its discretion in denying the motion to sever offenses. Id.

3. We find no merit in Dailey's contention that the trial court erroneously denied his motion to exclude the testimony of the State's

---

[2] Indeed, the third incident charged but nolle prossed, an attempted robbery at another hotel, was also similar.

fingerprint expert. In fact, Dailey appears to concede that under Georgia law, the trial court was correct in admitting the testimony. OCGA § 24-9-67 provides that experts' opinions "on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." The trial court makes its determination based on available evidence, rather than by judging whether a particular procedure is recognized by a consensus of the scientific community. As stated in *Orkin Exterminating Co. v. Carder*, 258 Ga. App. 796 (575 SE2d 664) (2002):

> Once a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty. . . . The decision as to whether a procedure has reached the requisite standard of verifiable certainty and scientific reliability is a matter within the discretion of the trial court.

(Citations, punctuation and footnotes omitted.) Id. at 799 (1).

Dailey argues that Georgia should replace its longstanding guidelines for admitting scientific evidence with the rule based upon Federal Rule of Evidence 702 and adopted in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993) (techniques upon which expert opinion based need not be generally accepted as reliable as precondition for admission into evidence, as long as evidence meets standards of reliability and relevance under federal rules of evidence).[3]

This court is not, of course, bound by *Daubert*. Indeed, we have been consistent in declining to apply the *Daubert* standard. "Because *Daubert* involved application of a federal evidentiary rule which has not been adopted in Georgia, *Daubert* has not been adopted in Georgia either." (Citations and footnote omitted.) *Orkin*, supra at 800 (1). See also *Bryant v. Hoffmann-La Roche, Inc.*, 262 Ga. App. 401, 408, n. 4 (585 SE2d 723) (2003). In addition, the Supreme Court of Georgia has found fingerprint evidence both reliable and admissible. "[F]ingerprint comparison . . . is not novel, and has been widely accepted in Georgia courts." *Whatley v. State*, 270 Ga. 296, 299 (6) (509 SE2d 45) (1998). This court has no authority to overrule *Whatley*.

---

[3] We note that in his brief, Dailey cites *United States v. Plaza*, 188 FSupp.2d 549 (E.D. Pa. 2002). He states that in *Plaza*, fingerprint evidence was held inadmissible under the *Daubert* standard. But our reading of *Plaza* is that on reconsideration a ruling to that effect was reversed, and *Plaza* now stands for the proposition that such evidence *is* admissible.

Because the testimony in issue met the Georgia standard for admission into evidence, the trial court did not err in admitting the testimony of the State's expert fingerprint witness.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 3, 2005.

*Richard O. Allen,* for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, Laura J. Murphree, Assistant District Attorneys,* for appellee.