A96A0092. DeCASTRO v. THE STATE.
(470 SE2d 748)

SMITH, Judge.

Victor Fidel DeCastro was indicted by a DeKalb County grand jury on four counts of molesting his thirteen-year-old stepdaughter. A jury found him guilty of three of the four counts, and he appeals from the judgment of conviction and sentence.

DeCastro's three enumerations of error present a single issue: whether it was improper to require him to choose between the admission of a "mug shot" taken at the time of his arrest and the admission of a Polaroid photograph taken in the hallway of the sheriff's department. He contends the photographs had no probative value and their

prejudicial effect on the jury therefore clearly outweighed any basis for admission. Both photographs show him wearing disheveled attire, an unkempt beard, and a "dreadlocks" hairstyle. At some time during the 16 months intervening between his arrest and trial, he shaved off the beard and hair. At trial, he was clean-shaven and bald.

The photographs generated a lengthy colloquy between the trial court and counsel regarding their potential for prejudicial effect on the jury. The trial court noted that "in this picture [the mug shot] there is something suggestive and sinister about it and it has to do with — at least in some folks' minds it has to do with the hairstyle," and expressed concern that "the idea behind submitting that photograph is for the prejudicial value." The prosecutor acknowledged that the photograph made DeCastro appear "ominous." With respect to the Polaroid photograph, the trial court observed that the dreadlocks were even more prominent than in the first photograph, and that it gave DeCastro "a wiry, wild look."

Defense counsel, concerned that the dreadlocks hairstyle would prejudice the jury because of its association with a religion or lifestyle that some might find offensive, chose the "mug shot," with the understanding that "as long as the record reflects that I object to both of them . . . they are both bad, judge, and they just don't prove anything." The prosecutor did not publish the photograph during the trial, but displayed it to the jury for the first time at the conclusion of the State's closing argument, saying, "His appearance before you today is a deception, just like all the other deceptions that he wants you to believe. When you go into the jury room, take a look at how he appeared . . . to that child when he forced himself upon her."

The rule in Georgia is well-established that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. However, such considerations are appropriately committed to the trial court's sound exercise of discretion. . . ." (Citations and punctuation omitted.) *Bell v. State*, 203 Ga. App. 109, 110-111 (3) (416 SE2d 344) (1992). As noted in *Bell*, however, the evidence must be relevant to some issue being tried. We conclude that these photographs were irrelevant to any issue in the case, and therefore we must reverse.

The State provided three reasons for the relevance of the photographs. First, it contended they were relevant to show what DeCastro looked like at the time of the offense, to explain the victim's fear of him. Although the trial court had rejected this basis, the State re-

lied upon it in closing argument to the jury.[1] The second argument was that the defendant had "cleaned up his act big time" and the jury was entitled to know that. The State's final argument was that all circumstances surrounding an arrest are relevant for whatever value the jury may wish to place on them.

1. Addressing the State's final argument first, " '[s]urrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. (Cit.) Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae. . . . In addition, all circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them. (Cits.)' *Fuqua v. State*, 183 Ga. App. 414, 419-420 (1c) (359 SE2d 165) (1987)." *Dean v. State*, 211 Ga. App. 28, 31-32 (438 SE2d 380) (1993). "The facts and circumstances surrounding the arrest of a defendant have been held to be relevant and admissible during the trial of a criminal case. Since the statement explained the circumstances of the arrest it would meet the original evidence requirements of OCGA § 24-3-2." (Citations and punctuation omitted.) *Ivester v. State*, 252 Ga. 333, 335 (2) (313 SE2d 674) (1984). *Ivester*, however, makes abundantly clear that the evidence must be *otherwise* relevant: "the conduct must involve matters concerning which the truth must be found (i.e. are relevant to the issues on trial)." (Citations and punctuation omitted.) Id. Moreover, this "does not overcome other objections such as impermissibly placing character in evidence." Id.

Many, though not all, of the decisions admitting evidence of the circumstances of arrest involve the "res gestae," where the arrest was "contemporaneous" or closely related in time to the offense and bore a "logical relation" to the offense. *Terrell v. State*, 138 Ga. App. 74 (1) (225 SE2d 470) (1976). See, e.g., *Perry v. State*, 214 Ga. App. 444 (448 SE2d 74) (1994) (officers arrested Perry shortly after observing his sale of drugs; their testimony that he "appeared to be in charge" of the sale admissible as part of the circumstances of arrest); *Dean v. State*, supra (defendant arrested immediately after commission of offense; similar transaction discovered through defendant's incriminating statement made after arrest admitted as continuation of main offense and part of res gestae); *Kirk v. State*, 210 Ga. App. 440, 443 (436 SE2d 553) (1993) (arrest occurred within 45 minutes of offense and at end of pursuit which began "a short time" after offense, id. at 441); *Fuqua v. State*, supra (arrest occurred as Fuqua left "moni-

---

[1] DeCastro, however, did not object to this portion of the State's closing argument, and we do not consider this as a ground for reversal. Rather, it demonstrates the basis on which the State urged admission of this evidence.

tored" motel room shortly after commission of drug offense).

Since DeCastro was not arrested until more than a week after the underlying offense, a single incident, occurred, and the arrest was not logically related in time or circumstances to the offense, the "res gestae" rule does not apply. See *Allen v. State*, 174 Ga. App. 206, 207-208 (329 SE2d 586) (1985) (victim's statements "some three days" or more after incident not part of res gestae); *Scott v. State*, 131 Ga. App. 655, 656 (1) (206 SE2d 558) (1974) (victim's description of alleged crime to police officer three days after the occurrence not part of res gestae); *Racquemore v. State*, 204 Ga. App. 88, 89 (418 SE2d 448) (1992) (defendant's statement made after he abandoned shoplifting attempt and entered store office for interview not part of res gestae).

Likewise, in decisions allowing the admission of "mug shots" the photographs typically were taken during an arrest at or near the time of the *offense* to show some circumstance relevant to the offense. For example, in *Mattarochia v. State*, 200 Ga. App. 681, 684 (4) (409 SE2d 546) (1991), the photograph showed intoxication still apparent at the time of an arrest for driving under the influence. No such issue is presented here. Neither are the photographs incriminating items *found* in defendant's possession upon arrest, *Gonzalez v. State*, 213 Ga. App. 667, 668-669 (2) (445 SE2d 769) (1994), nor spontaneous statements made by the defendant at the time of arrest, *Ellerbee v. State*, 215 Ga. App. 102, 106 (8) (449 SE2d 874) (1994), but photographs taken by the police.

This case also does not involve any question of identity, thus distinguishing it from those cases where a booking photograph is admissible to show that the defendant's appearance at the time of the crime matched an earlier description given by the victim, although his appearance had changed at the time of trial. See, e.g., *Duckworth v. State*, 246 Ga. 631, 635 (6) (272 SE2d 332) (1980) (photograph "crucial to the state's proof"); *O'Toole v. State*, 258 Ga. 614, 615-616 (2) (373 SE2d 12) (1988) (photograph relevant to identify defendant whose appearance had changed since the crime).[2]

None of these circumstances is present here: the officers discovered no *relevant* items or physical condition to be memorialized; identity was not an issue; and the arrest was not part of the res gestae of the offense. While the rule allowing the admission of circumstances surrounding an arrest has been steadily extended, these photographs do not meet any of the criteria established in prior decisions.

---

[2] Contrary to the State's contention that identity in *O'Toole* was not an issue because the defendant claimed self-defense, the change in the defendant's appearance remained relevant to corroborate witnesses who testified regarding the defendant's earlier threats against the victim.

2. Despite the State's argument that the jury was entitled to know how DeCastro appeared to the victim at the time of the offense, the photographs were not relevant to that issue, as they were taken some time after the offense. No testimony was elicited from any witness regarding DeCastro's appearance at the time of the offense or whether it had changed at any time during the seven years he had lived with the victim. Moreover, the State presented no evidence from any witness that DeCastro's appearance frightened or intimidated the victim. As the trial court correctly noted, this contention has no merit.

3. The State's remaining argument for the admission of the photograph is the one the State employed in closing argument: that DeCastro has used "a series of deceptions" and is "cleaning up his act," and that "his appearance before [the jury] is a deception, just like all the other deceptions that he wants you to believe." This argument comes perilously close to introducing DeCastro's character into evidence without his having "opened the door" to such testimony, see OCGA § 24-2-2 and annotations thereto, and DeCastro challenges it on that basis. While correctly noting that evidence does not become inadmissible merely because it may incidentally introduce the accused's character or reputation, the State also acknowledges the evidence must first be "relevant and material to an issue in a criminal case."

While we do not list exhaustively every possibility, a defendant's appearance might become relevant and material through testimony that his appearance was frightening or intimidating, particularly if that is an element of the offense charged. See, e.g., *Daniels v. State*, 264 Ga. 460 (448 SE2d 185) (1994) (the Anti-Mask Act); *Jackson v. State*, 205 Ga. App. 827, 828 (1) (b) (424 SE2d 6) (1992) (reckless conduct); OCGA § 16-8-40 (a) (2) (robbery by intimidation). A defendant's appearance or personal habits might also be relevant to motive or bent of mind in the commission of certain offenses. See, e.g., *Wood v. State*, 255 Ga. 697, 698 (4) (341 SE2d 442) (1986) (photographs of defendant wearing and displaying Nazi regalia relevant to motive and bent of mind in murder of Jewish victim). As noted above, circumstances of an arrest would also be relevant if probative of some aspect of the offense such as identity or a part of the res gestae. In all these cases, the trial court properly could exercise its sound discretion to conclude that the probative value of the evidence outweighed the danger of prejudice. See *Bell v. State*, supra, 203 Ga. App. at 110-111 (3).

Contrary to the State's argument here, whether DeCastro acquired a suit, a shave, or a haircut before appearing at trial is irrelevant to any issue in this case. It is not part of the res gestae and does not explain a party's or witness's conduct. It does not show identity,

an element of the offense, bent of mind, or any of the other possibilities of potential relevance we have considered. The photograph was "not material to or admissible on the issue of motive, intent and course of conduct," nor was it admissible "for the purpose of explaining the circumstances surrounding the crime." *Racquemore v. State,* supra, 204 Ga. App. at 89.

The scope of closing argument is broad, and counsel certainly may rely on otherwise relevant, probative, and admissible evidence to argue that a party is not being truthful or is otherwise attempting to deceive the jury. *Crowe v. State,* 265 Ga. 582, 593 (18) (e) (458 SE2d 799) (1995). Once evidence is properly admitted, the State may use it as a basis from which to draw inferences or make deductions within the broad scope of closing argument. *Green v. State,* 209 Ga. App. 274, 275 (4) (433 SE2d 383) (1993). The photograph here, however, was relevant to no disputed issue and appears to have been displayed to the jury for the *sole* purpose of contrasting DeCastro's "ominous" but non-probative physical appearance at an irrelevant past time with his dress and demeanor at trial, in order to draw the inference of a deceitful character. Under these circumstances, the potential dangers of unfair prejudice, confusion, and misleading of the jury are counterbalanced by no probative value whatever. We must conclude the trial court abused its discretion in admitting this evidence.

Finally, we do not conclude this error was harmless. The evidence was not overwhelming in support of the jury's verdict. No physical evidence was presented; the State's case consisted of the victim's testimony and the testimony of a teacher, a friend, a physician, a DFACS worker and law enforcement personnel repeating the victim's statements to them. DeCastro presented the testimony of several family members, including positive testimony that DeCastro did not enter the room where the victim stated the offense took place. He also pointed to inconsistencies in the victim's story and to the victim's pretrial, tape-recorded recantation, which she made in an unannounced appearance at his attorney's office. DeCastro presented testimony that the victim falsely accused him because he refused to buy some shoes for her or because she sought to "spark an argument" between him and her mother. The jury deliberated for some time, and an *Allen* charge was given before a verdict was returned. Under these circumstances, we cannot conclude that the admission of the photograph did not affect the jury's verdict.

*Judgment reversed. Pope, P. J., concurs. Andrews, J., concurs in the judgment only.*

DECIDED MARCH 29, 1996.

*Mark J. Kadish*, for appellant.

*J. Tom Morgan, District Attorney, Sheila A. Conners, Robert M. Coker, Assistant District Attorneys*, for appellee.