A04A0397. LESTER v. THE STATE.
(600 SE2d 787)

ANDREWS, Presiding Judge.

Nicholas David Lester appeals from the trial court's denial of his motion for a new trial following his conviction by a jury of armed robbery.[1]

1. In his first enumeration of error, Lester challenges the legal sufficiency of the evidence.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld.

*Moore v. State*, 254 Ga. App. 134 (561 SE2d 454) (2002).

Viewed in the light most favorable to the verdict, the evidence was that, around 10:30 p.m. on August 24, 2001, Rizzi, a long-time clerk at the BP station and convenience store on Whitlock Avenue in Cobb County, was on duty when she saw a young man enter the store.

---

[1] Lester was also charged with and convicted of aggravated assault, which was merged into the armed robbery for sentencing. He was acquitted of kidnapping.

She realized that she had seen him come in several times before. She described him as a skinny, white male, approximately 5′ 9″ tall, slight facial hair, a silver crown on a front tooth, with a short, spiked hairstyle with tips bleached blond. He was wearing a tee-shirt and very oversized jeans, which allowed his plaid boxer shorts to show. While busy with another customer, Rizzi saw the young man, whom she later identified as Lester, grab three packs of Newport cigarettes from the counter display. She had just restocked the display as she did every night prior to closing at midnight and knew how many packs were there.

Lester then walked back toward the cooler between two rows of candies, so Rizzi no longer had a clear view of him. He then came back to the counter and placed only one pack of Newports on the counter. Rizzi asked him, "[a]re you going to pay for the rest?" Lester slammed a second pack down on the counter and said, "I ain't got no f'in cigarettes." Lester did not put down the third pack. Rizzi, who described Lester as having "a look in his eyes," sensed trouble and told him to leave and not come back while she was there.

Lester left through the side door facing a nearby Kroger and Rizzi prepared to close the store. She counted the receipts and dropped them into the safe and placed the two packs of Newports left by Lester back into the display. She locked one of the two entry doors and heard the Kroger side door open. As she looked up, she saw Lester reenter the store, wearing a baseball cap and carrying an old wooden baseball bat. She also noticed an oriental type design tattoo which encircled one arm. Lester said, "I got the cigarettes now bitch, now I want the f'in money." He struck the side of the counter with the bat, grabbed Rizzi's arm and pushed her behind the counter. He continued to demand money, but Rizzi explained she had just put all the money in the safe and she did not have the keys. Lester then struck the telephone with the bat, ripped it off the wall, and threw it at her. He then stated, "[o]kay, bitch. You know I got to kill you." He pushed her toward the rear of the store, forced her down into a corner, and beat her repeatedly with the bat on her arms, leg, hip, and back, causing severe and extensive bruising. During this beating, Lester continued screaming, "I'm going to f'in kill you, bitch."

Recalling that the door on the Kroger side of the store was still unlocked, Rizzi told Lester she would give him the money. She got up and he grabbed her arm, pushing her forward. Rizzi then lunged for the door, with Lester grabbing her shirt and ripping it. She escaped, dashing into the street into the path of an oncoming truck. The driver used his cell phone to call police while Rizzi continued to watch Lester in the store. He apparently then fled through the Kroger side door and ran. The police arrived shortly and Rizzi provided them with a very

specific description of the man, including his clothing, hair, the silver crown, and tattoo. She also indicated that he could not have gotten far.

Lester was seen by officers in the Kroger lot carrying a long stick-like object. After a pursuit, officers and a K-9 unit eventually flushed Lester from the surrounding woods and detained him. The baseball cap and bat were found in the woods.

In Lester's pockets, officers found a $1 bill, a lighter, a package of SweeTarts, and five packs of Newport cigarettes, only one of which was opened. Rizzi stated that, after Lester left the store the first time with one pack of Newports, no one else had been around the display except when she replaced the two packs Lester had attempted to take. During the crime scene investigation, officers found the Newport packs had been disturbed and at least three or four packs were missing from the display. The store sold SweeTarts and had cigarette lighters for sale, but the lighters were behind the counter and could normally only be reached by the cashier or someone back there.

After Lester was detained by officers, he was immediately taken back to the store and identified by Rizzi as her assailant. A photo was also taken of Lester that evening, showing his spiked blond hair. Rizzi and several officers testified that this was the way he looked when arrested.

Lester contends that the evidence of armed robbery was insufficient because there was no evidence that Lester took the cigarettes before or contemporaneously with the assault on Rizzi with the bat. He argues that the evidence is that the cigarettes were taken on the first trip.

This latter argument, however, is not sustained by the evidence. As set out above, there was circumstantial evidence that Lester took at least three packs of cigarettes after Rizzi had run out of the store following her assault.

> A conviction may be based upon circumstantial evidence if the proved facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused. OCGA § 24-4-6. When the evidence meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury. When the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law. Further, while circumstantial evidence must

exclude every other *reasonable* hypothesis but the defendant's guilt, the evidence need not exclude every inference or hypothesis.

(Citations and punctuation omitted; emphasis in original.) *Hayes v. State*, 249 Ga. App. 857, 860 (1) (549 SE2d 813) (2001).

Here, Rizzi's testimony, together with the photos taken of the store following the incident, reflect the missing Newport cigarettes. Also, as Rizzi stated, the cigarette lighters were only accessible from behind the counter. This circumstantial evidence was found by the jury to exclude any other reasonable hypothesis except Lester's guilt and was legally sufficient.

Regarding the remaining argument, OCGA § 16-8-41 (a) provides, in pertinent part, that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the *immediate presence of another* by use of an offensive weapon. . . ." (Emphasis supplied.)

" 'Immediate presence' has been held to extend 'fairly far,' and robbery convictions are upheld even out of the physical presence of the victim. See *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975)." *Culver v. State*, 230 Ga. App. 224, 231 (6) (496 SE2d 292) (1998).

As stated in *Morgan v. State*, 195 Ga. App. 732, 734 (1) (394 SE2d 639) (1990),

[i]t has long been recognized, however, that when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can still be committed. See, e.g., *Welch v. State*, 235 Ga. 243, 245-246 (219 SE2d 151) [(1975)]; *Clements v. State*, 84 Ga. 660, 661-662 (11 SE 505) [(1890)]; *Maddox v. State*, 174 Ga. App. 728, 730 (330 SE2d 911) [(1985)]. Further, the concept of immediate presence is broadly construed if the object taken was under the victim's control or responsibility and the victim is not too distant. *Sypho v. State*, 175 Ga. App. 833, 834 (334 SE2d 878) [(1985)]; *Waters v. State*, 161 Ga. App. 555, 556 (289 SE2d 21) [(1982)]; *Mitchell v. State*, 157 Ga. App. 146, 147 (276 SE2d 658) [(1981)].

Rizzi, who ran to save her life, was immediately outside the store watching Lester during the time the circumstantial evidence indicated the cigarettes and lighter were taken. There was no error in the trial court's denial of Lester's motion for directed verdict on this ground. *Smith v. State*, 261 Ga. App. 25, 26 (1) (581 SE2d 673) (2003);

*Jones v. State*, 246 Ga. App. 494, 495 (1) (c) (540 SE2d 693) (2000); *Culver*, supra; *Morgan*, supra.

2. In his second enumeration, Lester argues that the trial court erred in overruling his objection to a portion of the State's closing argument.

In her closing, the prosecutor began by discussing general legal principles, including the presumption of innocence. She stated that

> he is only presumed innocent, and what you need to understand is being presumed innocent has nothing to do with factual innocence. What it has to do with is the State's *burden of proof*, which, in a criminal case, is always *proof beyond a reasonable doubt*. But it doesn't really have anything to do with factual innocence. *An example, and this is not this case, this is just an example,* . . . there might be a case where, . . . a defendant is charged with a crime and he talked with the police and he admitted every single thing he had done. But for some reason, his confession to the police gets excluded. Well, by the time you get to court, his attorney knows, the State knows, the judge knows, that, in fact, he is guilty because he admitted everything, but that is not evidence. . . .

(Emphasis supplied.)

At this point, defense counsel objected that this was improper argument, "and it almost sounds like it's shifting the burden for us to prove his innocence and alleging that a statement was made when it wasn't."

In response, the trial court stated, "just so it's clear to the jury that this is not this case, but *it was an example* and you're just speaking about that. But I'll let you go ahead and proceed with the jury understanding that the *burden is always upon the State.*" (Emphasis supplied.)

It appears, therefore, that the court's instruction to the jury cleared up any perceived misunderstanding as voiced by defense counsel. See *Pinch v. State*, 265 Ga. App. 1, 5-6 (4) (593 SE2d 1) (2003).

Further, we do not find the prosecutor's statement in violation of OCGA § 17-8-75 as a statement on a prejudicial matter not in evidence, as argued here. Even were we to find a violation, however, refusal of the trial court to grant a mistrial will not be disturbed on appeal absent manifest abuse. *Pullin v. State*, 258 Ga. App. 37, 42 (3) (572 SE2d 722) (2002); *Joseph v. State*, 231 Ga. App. 399, 403 (2) (498 SE2d 808) (1998). Here, following the trial court's instruction quoted above, no additional objection was voiced by Lester and "[a]cquiescence completely deprives [him] of the right to complain further."

(Citations and punctuation omitted.) *McKibbons v. State*, 216 Ga. App. 389, 392 (4) (455 SE2d 293) (1995), quoted in *Joseph*, supra.

3. Lester also contends that the trial court's overruling of his objection of "cumulative and inflammatory" to State's Exhibit 25, the photo taken of him shortly after his arrest, was error, relying on *DeCastro v. State*, 221 Ga. App. 83 (470 SE2d 748) (1996) (physical precedent only).

First, we note that under Court of Appeals Rule 33 (a), *DeCastro*, supra, is not binding precedent but is physical precedent only since one judge concurred in the judgment only. Second, there is no indication on the photo that this was a scary "mug shot" taken at the jail while Lester was in custody, as in *DeCastro*,[2] supra, and it was offered only to show how Lester appeared that night when taken into custody after being pursued and captured following robbery, not days later as in *DeCastro*, supra.

Also, when Rizzi identified Lester in court as the robber/assailant, she indicated that "[h]e looks so different."

"[A]ll circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them." (Citation and punctuation omitted.) *Kirk v. State*, 210 Ga. App. 440, 443 (1) (436 SE2d 553) (1993). "Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court." (Citation and punctuation omitted.) Id. "[N]o error is committed by admitting such evidence as part of the res gestae even though it may incidentally have placed appellant's character in issue. [Cit.]" *Overstreet v. State*, 182 Ga. App. 809, 811 (2) (357 SE2d 103) (1987).

Therefore, there was no error in admitting the photo showing how Lester looked shortly after being taken into custody. *Mattarochia v. State*, 200 Ga. App. 681, 683-684 (4) (409 SE2d 546) (1991); see *Smith v. State*, 265 Ga. App. 236, 237 (2) (593 SE2d 695) (2004).

4. Finally, following the prosecutor's question to Rizzi as to whether she had ever been contacted by defense counsel and her negative answer, defense counsel moved for a mistrial, arguing that this amounted to shifting the burden to Lester. Denial of the motion for mistrial is urged as error, although no authority in support of this contention is cited. See Court of Appeals Rule 27 (c) (2).

The decision to grant a mistrial or to provide curative instructions lies within the discretion of the trial court. *Danzis v. State*, 198 Ga. App. 136, 137 (1) (400 SE2d 671) (1990). Absent an abuse of that

---

[2] There, DeCastro's photo revealed a dreadlock hairstyle considered "sinister" by some, as noted by the trial court, and described as "ominous" even by the prosecutor.

discretion, an appellate court will not disturb the court's decision. See *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997).

Here, the trial court instructed the jury that "the burden of proof in this case rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt. There is no burden of proof upon the defendant whatever, and the burden never shifts to the defendant to prove innocence."

No abuse of discretion in denying the motion for mistrial has been shown. *Dunn v. State*, 251 Ga. 731, 734 (4) (309 SE2d 370) (1983); *Googe v. State*, 237 Ga. 175, 176 (1) (227 SE2d 51) (1976); *Lynch v. State*, 234 Ga. 446, 448 (B) (216 SE2d 307) (1975).

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JUNE 14, 2004.

*Maria Murcier-Ashley*, for appellant.
*Patrick H. Head, District Attorney, Amy H. McChesney, Ann B. Harris, Assistant District Attorneys*, for appellee.