## A08A0014. WILSON v. THE STATE.
### (661 SE2d 221)

MIKELL, Judge.

In a twelve-count indictment, Cedric Wilson was charged with armed robbery (Counts 1 and 2), aggravated assault (Counts 3 and 4), kidnapping (Counts 5 and 6), burglary (Count 7), entering an automobile (Count 8), two weapons offenses (Counts 9 and 10), and two misdemeanor battery offenses (Counts 11 and 12), all arising from a home invasion involving two victims and a second perpetrator. The state nolle prossed Count 9, and a jury found Wilson guilty on all remaining counts. Wilson was sentenced as a recidivist[1] to a life term on Count 1, life on Count 2, to run concurrently with Count 1; twenty years to serve ten on Counts 5 and 6, to run concurrently with Count 1; twenty years on probation on Count 7, to run consecutively to Count 1; five years to serve on Count 8, to run concurrently with Count 1; on Count 10, five years on probation, consecutive to Count 1; and on Counts 11 and 12, twelve months to serve, concurrent with Count 1. Counts 3 and 4 were merged with Count 1. Wilson appeals from the order denying his motion for a new trial. Discerning no error, we affirm.

1. Wilson challenges the sufficiency of the evidence to support his conviction on Count 1, armed robbery. In his brief, however, Wilson makes this argument with regard to victim Jackson, who is the subject of Count 2. Victim Crawford is the subject of Count 1, and Wilson does not contend that the evidence is insufficient to support his conviction of the armed robbery of Crawford. Accordingly, we address only the sufficiency of the evidence as to Count 2, the armed robbery of victim Jackson.

Viewed in the light most favorable to the verdict, the evidence shows that on the morning of March 8, 2005, Jackson, who was sitting in his den, noticed a strange Grand Am pull into his driveway. He got up and went to the door, by which time a short, stocky woman was standing in the doorway. Jackson's door was unlocked, and two men entered, pointing guns at him. The perpetrators were not wearing masks, and Jackson could see their faces. They pushed him onto the floor, pulled him into his kitchen, bound his arms and legs, hit him, kicked him, and beat him in the head. The perpetrators said that they were looking for a man named "Cadillac"; Jackson told them that he did not know anyone by that name and that the men had the wrong house. They ransacked Jackson's house for nearly an hour until his friend Crawford arrived.

---

[1]  OCGA § 17-10-7 (a), (c).

Crawford, who testified that he visits Jackson most mornings after dropping his daughter off at school, noticed the strange car with Alabama license tags in Jackson's driveway on the morning in question. A heavy-set woman was sitting in the driver's seat talking on a cell phone, and Crawford had a brief, odd, conversation with her. He then went to the front door, but it was locked, so Crawford rang the bell. A stranger opened the door, and Crawford asked where he could find Jackson. The man told him to come in and look; Crawford entered, the man closed the door behind him, and then a second man came around the corner holding a gun. The first, taller assailant pulled out his gun and ordered Crawford to take off his clothes and to walk into the kitchen. The perpetrators tried to tie him up, but Crawford resisted, so "they kept stomping [his] head" and beating him with a gun. Finally, they tied him up. The men took his gold chains, $600 in cash he kept in his wallet, his leather jacket, and his license. They kept asking about "Cadillac" and accused him of stealing two "bricks," or kilograms of cocaine. Crawford, like Jackson, told the men that they had the wrong house. Crawford identified Wilson at trial as the taller of the two perpetrators, although he did not pick Wilson out of a pretrial photo lineup.

Jackson testified that after the perpetrators left, he freed himself and Crawford and went to call the police, but the perpetrators had taken his cordless phone. They also took his .45 caliber pistol and some watches from his bedroom. Jackson identified Wilson as the taller perpetrator in a pretrial photo lineup and at trial.

Pursuant to OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon." In Count 2, Wilson was indicted for committing armed robbery by taking "a 25 caliber handgun" from Jackson's "immediate presence" by the use of a handgun. Wilson argues that his conviction for this armed robbery cannot stand for two reasons: (a) Jackson was not aware that his handgun was taken until after the police arrived, and (b) a fatal variance exists between the evidence adduced at trial, which showed that the stolen weapon was a .45 caliber gun, and the indictment, which described the weapon as a .25 caliber handgun. We disagree with Wilson's assertions.

(a) "It has long been recognized . . . that when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can

still be committed."[2] Thus, the "immediate presence" element of the offense of armed robbery "has been held to extend fairly far, and robbery convictions are upheld even out of the physical presence of the victim."[3] Here, the evidence shows that Wilson and the second perpetrator used weapons to keep Jackson bound by force and away from his property while it was being taken. Jackson testified that once they tied him up, they started going through his house, and they did so for 45 minutes to an hour. Wilson and his accomplice ransacked almost the entire home, flipping mattresses, pulling out drawers, and throwing items out of the top of the closet. Jackson testified that during this time, he was bound, on his stomach with his head up, and that he kept seeing feet pass by; Wilson and his accomplice kicked him in the head about ten times. Clearly, the jury was authorized to find that Jackson was aware that his life and personal property were at risk while Wilson terrorized him and remained in his home.[4]

This element of awareness was absent in the cases cited by Wilson; as such, the cases are distinguishable. For example, in *McNearney v. State*,[5] the assailant suddenly snatched the victim's purse from her shopping cart while she was unloading her groceries, and the victim was completely unaware of the occurrence until afterward.[6] Similarly, in *Grant v. State*,[7] neither the clerk nor the manager of the convenience store, whose attention was diverted by a perpetrator, was aware that an accomplice had taken the deposit money bag from the manager's office until the perpetrators were escaping by car.[8] In both *Grant* and *McNearney*, the absence of awareness on the part of the victims compelled the reversal of the defendants' convictions of robbery by sudden snatching.[9] By contrast, in the case at bar, a jury could find that Jackson was aware that items were being taken from his home while he was forcibly held at gunpoint. Viewed most favorably to support the verdict, the evidence

---

[2] (Citations and punctuation omitted.) *Lester v. State*, 267 Ga. App. 795, 798 (1) (600 SE2d 787) (2004). Accord *Allen v. State*, 286 Ga. App. 82, 84 (1) (b) (648 SE2d 677) (2007).

[3] (Citations and punctuation omitted.) *Lester*, supra. See *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975).

[4] See *Culver v. State*, 230 Ga. App. 224, 231 (6) (496 SE2d 292) (1998).

[5] 210 Ga. App. 582 (436 SE2d 585) (1993).

[6] Id. Cf. *Culver*, supra.

[7] 226 Ga. App. 506 (486 SE2d 717) (1997).

[8] Id. at 507.

[9] *Grant*, supra; *McNearney*, supra; accord *Smith v. State*, 281 Ga. App. 91, 92-93 (1) (635 SE2d 385) (2006) (store manager unaware that defendant robbed back office of deposit bag until after defendant left store).

was sufficient to authorize a rational trier of fact to find Wilson guilty beyond a reasonable doubt of armed robbery.[10]

(b) "The distinction between the [caliber of] weaponry in this case does not constitute a fatal variance between the allegata and the probata."[11] The fact that the evidence revealed that the stolen weapon was a .45 caliber pistol while the indictment described it as a .25 caliber handgun did not create a fatal variance. There is a longstanding rule in Georgia "that no fatal variance between the pleading and the proof exists where one weapon is charged in the indictment and a weapon of a similar nature capable of inflicting the same character of injury is shown by the evidence."[12] The same principle applies to the case at bar, although the weapon at issue was stolen and was not used to inflict injury.

> Not all differences between an indictment and proof consti-
> tute fatal variances. An accused must be definitely informed
> of the charges against him so that he may present a defense,
> and he must be protected against a second prosecution for
> the same offense. If a variance does not present these
> dangers, it is not fatal.[13]

In this case, it does not appear that Wilson was misled or prejudiced by the distinction between the caliber of the weapon as alleged and proved.[14] Thus, the variance was not fatal.

2. Wilson next contends that the trial court erred in sustaining the state's objection when defense counsel attempted to refresh Jackson's recollection with a police report. This alleged error has not been preserved for appellate review. After the court sustained the objection, counsel thanked the court and did not except to the ruling. "[H]aving failed to make any exception to this ruling, [Wilson] has waived his right to object to the ruling on appeal."[15]

3. Wilson argues that the trial court abused its discretion in ruling that evidence of his prior crimes would be admissible in the event he chose to testify. Once Wilson decided to testify, the state announced its intention to impeach him with certified copies of three

---

[10] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[11] *Lawson v. State*, 278 Ga. App. 852, 853 (2) (630 SE2d 131) (2006) (knife and box cutter).

[12] (Citations omitted.) *Brawner v. State*, 81 Ga. App. 163, 166 (3) (58 SE2d 238) (1950) (shotgun and pistol); accord *Hesterlee v. State*, 210 Ga. App. 330, 332 (1) (436 SE2d 32) (1993) ("error in the model of the gun used is not sufficient to constitute a fatal variance"); *Jackson v. State*, 158 Ga. App. 702 (3) (282 SE2d 181) (1981) (pistol and shotgun).

[13] (Punctuation and footnote omitted.) *Lawson*, supra. See *DePalma v. State*, 225 Ga. 465, 469-470 (3) (169 SE2d 801) (1969).

[14] See *Hesterlee*, supra.

[15] (Footnote omitted.) *Freeman v. State*, 257 Ga. App. 232, 234 (2) (570 SE2d 669) (2002).

prior convictions: a 1992 burglary, a 1993 burglary, and a 1996 conviction of drug distribution.[16] Under OCGA § 24-9-84.1 (b), a conviction more than ten years old may not be used to impeach a defendant who testifies unless the trial court "determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."[17] Wilson argues that the court failed to make the findings required by the statute. Pretermitting whether the court made sufficient findings, Wilson concedes in his appellate brief he has waived any alleged error in the trial court's ruling by introducing the evidence at the beginning of his direct examination. "A litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. Acquiescence deprives him of the right to complain further."[18]

4. Finally, Wilson argues that the trial court erred in denying his motion for new trial on the basis of ineffective assistance of counsel. We disagree.

In order to prove ineffective assistance of counsel, Wilson must demonstrate both that his counsel's performance was deficient and that the alleged deficiency prejudiced him.[19] "There is a strong presumption that counsel's actions are the result of sound trial strategy. But regardless of counsel's performance, reversal is not warranted if there is no reasonable probability that the outcome of the trial would have been different absent counsel's alleged errors."[20]

(a) First, Wilson argues that trial counsel was ineffective when she acquiesced in the trial court's refusal to allow her to refresh Jackson's recollection with a police report. The trial transcript shows that counsel asked Jackson whether he told the first officer who responded to the scene about the woman standing at his door. Jackson replied that he did not recall telling the officer that. Counsel sought to refresh Jackson's recollection with verbal statements incorporated into the report. The state objected that Jackson's memory could not be refreshed from a third party's records. The trial court sustained the objection.

Wilson is correct that "any document may be used to refresh the recollection of a witness, and the document need not have been

---

[16] Wilson's trial began on January 18, 2006. The drug conviction was actually entered in 1997; thus, it was not more than ten years old at the time of this trial.

[17] OCGA § 24-9-84.1 (b). See *Hinton v. State*, 280 Ga. 811, 818 (7) (631 SE2d 365) (2006); *Tate v. State*, 289 Ga. App. 479 (657 SE2d 531) (2008).

[18] (Citation and punctuation omitted.) *Young v. State*, 217 Ga. App. 575, 576 (2) (458 SE2d 391) (1995).

[19] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[20] (Citations omitted.) *Hester v. State*, 287 Ga. App. 434, 439 (3) (b) (651 SE2d 538) (2007). See OCGA § 24-9-69.

prepared by the witness."[21] And counsel testified at the hearing on the motion for new trial that she believed the court's ruling to be in error. But counsel also testified that she did not press the issue because "it was a fairly small thing. The jury probably had gotten the point . . . that there was something in the police report contrary to what his testimony was." Counsel's tactical decision to move on instead of excepting to the court's ruling is virtually unchallengeable because the police report is not in the record. Wilson did not introduce it into evidence at the hearing and did not summon Jackson to testify. Absent a proffer of the necessary evidence, Wilson has not demonstrated how counsel's failure to except to the ruling prejudiced the outcome of the trial.[22] Thus, this claim of ineffective assistance fails.

(b) Wilson also claims that trial counsel was ineffective when she did not except to the trial court's decision to allow Wilson's prior convictions in evidence for the purpose of impeachment. The record shows that counsel elected to elicit this evidence from Wilson as soon as he took the stand, as shown by the following colloquy:

Q. Mr. Wilson, you have had some problems with the law before, haven't you?
A. Yes, ma'am.
Q. Tell me . . . about any convictions you got in the State of Alabama.
A. When I was young, about nineteen or twenty, I had some charges of breaking into cars and convenience stores.
Q. Anything else?
A. I got a drug charge in '96.

Counsel testified at the new trial hearing that she had determined that the state would be able to carry its burden of proof on this issue; so counsel intentionally "bit the bullet and dealt with it." "Trial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[23] In the case at bar, trial counsel "pursued the reasonable strategy of placing the damaging information before the jury through [Wilson's] direct testimony, rather than risk having the information extracted from him on

---

[21] (Citations omitted.) *Miller v. State*, 275 Ga. 32, 36 (3) (561 SE2d 810) (2002).

[22] *Spear v. State*, 271 Ga. App. 845, 846-847 (2) (610 SE2d 642) (2005). See generally *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

[23] (Citation and footnote omitted.) *Terrell v. State*, 276 Ga. App. 102, 104 (2) (622 SE2d 434) (2005).

cross-examination."[24] Accordingly, this claim of ineffective assistance fails as well.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 11, 2008.

*Wystan B. Getz*, for appellant.
*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney*, for appellee.

---

[24] *Collins v. State*, 276 Ga. 726, 728 (2) (583 SE2d 26) (2003). See also *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (a) (573 SE2d 465) (2002) (counsel's decision to "beat the State to the punch" by telling jury about defendant's prior drug conviction was a reasonable strategic decision); *Crawford v. State*, 252 Ga. App. 722, 725 (3) (556 SE2d 888) (2001) (counsel's fear that talkative defendant would "open the door" for prosecution provided reasonable strategic decision to put defendant's past crimes into evidence on direct examination).