## S11A1679. YOUNG v. THE STATE.
### (721 SE2d 855)

CARLEY, Presiding Justice.

After a jury trial, Appellant Torrell McGarrett Young was found guilty of malice murder, two counts of felony murder, two counts of burglary, armed robbery, two counts of attempted armed robbery, three counts of aggravated assault, three counts of tampering with evidence, and conspiracy to distribute cocaine. The felony murder verdicts were vacated by operation of law. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for malice murder, two consecutive 20-year terms for burglary, a consecutive life sentence for armed robbery, two concurrent 10-year terms for attempted armed robbery to be served consecutively to all other terms, and three concurrent 10-year terms for tampering with evidence. The trial court merged all other offenses into those convictions for sentencing purposes. After the filing of a motion for new trial, the trial court entered an order granting the motion with respect to one of the tampering with evidence convictions and the conspiracy to distribute cocaine count, but denying the remainder of the motion. Appellant appeals from that order.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that on September 27, 2004, Appellant Torrell M. Young met with Roderick Cooper, Donnie Murphy, Carla Simmons, Ashley Davis, and Jodi McWalters at the Bulldog Inn in Athens, Georgia. The group conspired to rob the victim, Paul Rucker, because Appellant had observed a large amount of money in the victim's wallet the previous day. The next day, Appellant, Cooper, Murphy,

---

[*] The crimes occurred on September 28, 2004, and the grand jury returned the indictment on September 11, 2006. The jury found Appellant guilty on January 31, 2007, and, on that same day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on February 21, 2007, amended on December 21, 2010, and granted in part and denied in part on January 7, 2011. Appellant filed the notice of appeal on January 19, 2011. The case was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

and Ms. Simmons proceeded to the victim's residence in Commerce, Banks County. Ms. Simmons entered the residence, offered the victim sex in exchange for money, and led the victim to his bedroom. Appellant and Murphy then entered the residence as planned, and found the couple in the bedroom. Ms. Simmons subsequently exited the house and went back to the waiting car.

Once inside, Murphy hit the victim in the head with a liquor bottle while Appellant kicked the victim and beat him with a telephone. Both men also proceeded to search the residence for money. After a short while, Ms. Simmons urged Cooper, who had been waiting in the car, to enter the residence to check on Appellant and Murphy. Cooper, armed with a handgun, entered the house, and, upon finding the others, pointed the gun at the victim and demanded money. Appellant then took Cooper's gun and held it to the victim's head demanding money. After no money was discovered, Appellant told Murphy to make sure that the victim was physically incapacitated so that he could not get to a phone. Appellant and Cooper then exited the residence with a computer that they found in the living room on the way out. While alone in the residence with the victim, Murphy strangled the victim to death with his hands. Murphy emerged from the house covered in the victim's bodily fluids and carrying the wine bottle that he used to strike the victim, which he discarded minutes later out the window of the car. The group drove to a nearby gas station whereupon they cleaned the computer and Murphy cleaned himself. Appellant later sold the computer, and the group used the proceeds to buy drugs.

After not being able to reach the victim on the day of the murder and when no one answered the knock on the door the following day, the victim's brother entered the residence and found the victim deceased on the floor of the bedroom. At trial, the medical examiner testified that the cause of the victim's death was blunt force trauma to the head complicated by asphyxia by manual strangulation. The evidence was sufficient to authorize a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the trial court erred by excusing several potential jurors because, according to Appellant, there is no evidence that these jurors filed a request to be excused or an affidavit as required by OCGA § 15-12-1.1. He further argues that the jurors were excused indiscriminately in violation of this Court's holding in *Yates v. State*, 274 Ga. 312, 314-316 (2) (553 SE2d 563) (2001).

Pursuant to OCGA § 15-12-1.1 (a), a trial court may excuse a potential juror if he or she is engaged "in work necessary to the public health, safety, or good order," is a full-time student, is the

primary caregiver of a child six years of age or younger, is a "primary teacher in a home study program," or shows other good cause. However, "whether to excuse a juror for hardship lies within the trial court's discretion." *Gulley v. State*, 271 Ga. 337, 344 (7) (519 SE2d 655) (1999). Moreover, a trial court's discretion to excuse jurors exists independent of and in addition to its statutory duty to excuse jurors. *Sealey v. State*, 277 Ga. 617, 620 (8) (593 SE2d 335) (2004).

Contrary to Appellant's assertion, the trial court did not issue a blanket, indiscriminate excusal of all jurors who raised a hardship. Besides the fact that some jurors were denied a hardship request, the record shows that the trial court complied with the Banks County Superior Court's standing order regarding juror excusals. The court issued two separate orders listing every juror who was excused as well as the reason for the excusal. In the second order, the trial court thoroughly explained the procedure that was followed with regard to excusing potential jurors:

> First, no juror was excused or deferred unless that juror made inquiry to the clerk's office requesting to be excused. After the juror requested to be excused, the clerk informed the [trial court] of the reason for the request, and the [trial court] made a decision to excuse the juror based on that information, to contact the juror personally and inquire of him or her as to the request, or to deny the request.

At a pre-trial hearing, the trial court went through the list of all jurors who were excused and gave reasons for his actions. See *English v. State*, 290 Ga. App. 378, 383 (3) (b) (659 SE2d 783) (2008). Additionally, "[t]here is absolutely no evidence that the excusals or deferrals in this case were allowed in such a manner as to alter, deliberately or inadvertently, the representative nature of the jury lists. [Cit.]" *English v. State*, supra. Finally, "[t]he jury panels which were put upon the accused contained [101] veniremen, substantially more than required by OCGA § 15-12-160." *Hall v. State*, 254 Ga. 272 (3) (328 SE2d 719) (1985).

In *Yates v. State*, supra, this Court reversed a conviction due to an improper excusal of potential jurors. However, the present case is distinguishable. The *Yates* court emphasized that the discretion to excuse jurors lies with the trial court. However, in that case, the county clerk, without any written guidelines and without any input by the trial court, granted the excusals. In the present case, the trial court, not the clerk, granted all the excusals and also followed specific written guidelines provided by the judicial circuit. The *Yates* court also pointed out that the clerk made no inquiry into the nature of most of the excuses and appeared to have granted every request.

In contrast, the trial court in the present case personally telephoned those jurors who he believed required a deeper inquiry into their hardship request, and not all jurors were granted a deferral. Finally, the excusals of potential jurors in *Yates* were in violation of a previous order in that case issued by the trial court requiring the defense to be present when any juror was excused, and the defense was not given any notice of any excusals until the first day of voir dire. In the present case, the trial court issued an order informing Appellant that he would be granting excusals to potential jurors without counsel present, and also provided Appellant with updates of the jurors excused and the reasons therefore. Hence, *Yates v. State* does not demand a reversal in this case.

Although the record does not contain an affidavit for every excused juror, after a thorough review of the trial court's procedure, "we do not find 'such disregard of the essential and substantial provisions of the statute as would vitiate the array( ).' [Cit.]" *Bryant v. State*, 288 Ga. 876, 882 (6) (708 SE2d 362) (2011). See also *Hendrick v. State*, 257 Ga. 17, 18 (2) (354 SE2d 433) (1987); *Franklin v. State*, 245 Ga. 141, 147 (1) (e) (263 SE2d 666) (1980), overruled on other grounds, *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999).

3. Appellant contends that the convictions for eight of the alleged offenses were improper because the trial court effectively lowered the State's burden of proof by allowing the prosecutor to argue that he was guilty of these offenses as a party to the crime even though the indictment alleged that he was the actual perpetrator of these offenses. However,

> OCGA § 16-2-21 does not require that one who is a party to the crime be indicted as a party; rather, it provides that one who is a party to the crime may be indicted, convicted and punished for that crime upon proof that he was a party to the crime.

*Brinson v. State*, 261 Ga. 884 (1) (413 SE2d 443) (1992). See also *Byrum v. State*, 282 Ga. 608, 609-610 (2) (652 SE2d 557) (2007). In the present case, the jury was satisfied beyond a reasonable doubt that these eight offenses were committed and that Appellant was a party to their commission. That is all that is required under Georgia law, and, therefore, the convictions were proper.

4. Appellant contends that the trial court erred by allowing the prosecutor to state during closing argument that, with regard to the proof required to establish a conviction for armed robbery, the immediate presence element of armed robbery may be satisfied even if the property taken is in a separate room from the victim. According to Appellant, this is an erroneous statement of the law which

requires a reversal. However, "[o]ne's 'immediate presence' in this context stretches fairly far, and robbery convictions are usually upheld even out of the physical presence of the victim if what was taken was under his control or his responsibility and if he was not too far distant." *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975). In *Welch*, a conviction for armed robbery was upheld where money was taken from a convenience store's cash register after the victim was forced to leave in his car with a co-conspirator. In *Wesley v. State*, 294 Ga. App. 559, 561 (1), fn. 2 (669 SE2d 511) (2008), a conviction for armed robbery was affirmed where, after the victim was forced into the basement of his house, the perpetrator searched the rest of his residence, taking several of the victim's valuables. Similarly, in the present case, the victim had been forced into his bedroom where he was violently detained while Appellant and a co-conspirator took his valuables from the living room. The goods stolen had been previously under the victim's control as they were owned by him and located in his house, and the victim was being threatened in the very next room, certainly not too far distant. Therefore, as the prosecutor's statement was not an incorrect interpretation of the law, this enumeration is without merit. See *Matthews v. State*, 268 Ga. 798, 804 (7) (a) (493 SE2d 136) (1997); *Lester v. State*, 267 Ga. App. 795, 798 (1) (600 SE2d 787) (2004); *Smith v. State*, 261 Ga. App. 25 (1) (581 SE2d 673) (2003).

5. Appellant alleges that a new trial is required because his conviction for malice murder as a party to the crime is mutually exclusive with his convictions of tampering with evidence for concealing Murphy's bloodied garments and shoes and a bottle used as a weapon. See *Dumas v. State*, 266 Ga. 797, 799 (2) (471 SE2d 508) (1996). "Verdicts are mutually exclusive 'where a guilty verdict on one count logically excludes a finding of guilt on the other. (Cits.)' [Cits.]" *Jackson v. State*, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003). Appellant makes no argument as to how a finding of guilt for murder logically excludes a finding of guilt for tampering with evidence, but instead attempts to argue that he was guilty of merely hindering the apprehension of a criminal, a conviction of which is mutually exclusive to a conviction of the substantive crime. *State v. Freeman*, 272 Ga. 813, 815 (2) (537 SE2d 92) (2000). Even assuming that Appellant could create an argument around a crime for which he was not indicted and for which we are to assume that he would be found guilty, Appellant's argument is inane because he states that he should have been convicted of hindering instead of tampering with evidence because he did not have the intent to prevent the apprehension of Murphy but to prevent the apprehension of himself. However, in contrast to the crime of evidence tampering, a defendant is guilty of the offense of hindering the apprehension of a criminal

under OCGA § 16-10-50 only if the criminal who is being sheltered is someone other than the defendant. Therefore, Appellant's own argument contradicts his conclusion.

At trial, the prosecution presented evidence that, immediately after the murder, Appellant and his co-defendants stopped at a convenience store where Murphy's bloody clothes and shoes were discarded. The prosecution also produced evidence that Murphy threw the bottle out of the window of the car as the group was driving home from the store. Therefore, the evidence was sufficient to convict Appellant of two counts of tampering with evidence. Moreover, a verdict of guilty for evidence tampering is not mutually exclusive of a verdict of guilty for malice murder because the elements of evidence tampering are not at all logically inconsistent with the elements required for murder. *Waits v. State*, 282 Ga. 1, 3 (2) (644 SE2d 127) (2007). See also *DeLeon v. State*, 289 Ga. 782 (716 SE2d 173) (2011) (convictions of felony murder and tampering with evidence upheld); *White v. State*, 287 Ga. 713, 717 (1) (d) (699 SE2d 291) (2010) (convictions of malice murder and tampering with evidence upheld).

6. Appellant contends that the trial court erred by failing to state in the jury instructions on two counts of aggravated assault the manner by which Appellant allegedly committed the offenses as specified in the indictment. Count 11 of the indictment alleges that Appellant committed the offense of aggravated assault with the use of a handgun, and Count 12 of the indictment alleges that Appellant committed the offense of aggravated assault by using his hands and feet in such a way that is likely to result in serious bodily injury, that is, by bludgeoning, kicking, and strangling the victim. Appellant claims that the trial court omitted in its instructions that the jury must find, in order to convict him for aggravated assault, that he brandished a handgun and used his hands and feet in a violent way. However, the transcript belies Appellant's claim. In its charge to the jury, the trial court stated the following:

> Count 11 alleges aggravated assault in that the Defendants did unlawfully make an assault upon the person of Paul Rucker with a handgun, a deadly weapon, by pointing the handgun at Paul Rucker, thereby placing him in reasonable apprehension of immediately receiving a violent injury. Count 12 alleges aggravated assault in that the Defendants did, while acting as a party to the crime with Donald Murphy, unlawfully make an assault upon the person of Paul Rucker with objects, to wit: hands and feet which, when used offensively against another person are likely to result in serious bodily injury, by bludgeoning, kicking, and

strangling Paul Rucker, thereby attempting a violent injury to said person.

Further on in the jury instructions, the trial court explained the differences between Counts 11 and 12, including that the aggravated assault in Count 11 alleges that Appellant, with the use of a deadly weapon, placed the victim in reasonable apprehension of receiving a violent injury, and that the aggravated assault in Count 12 alleges that Appellant violently injured the victim with an object, which was previously specified as his hands and feet. Thus, contrary to Appellant's claim, the trial court did not fail to instruct the jury on the manner by which he allegedly committed the aggravated assaults in Counts 11 and 12.

7. Appellant contends that the felony murder count which was predicated on the felony of conspiracy to distribute cocaine must be vacated since the count which alleged conspiracy to distribute cocaine was vacated by the trial court due to a defect in the indictment. According to Appellant, he cannot be convicted of felony murder when he has not been convicted of the separate underlying felony. However, any issue with regard to the felony murder counts "is moot because [Appellant's] felony murder conviction was vacated by operation of law based on his conviction for the charge of malice murder. [Cit.]" *Darville v. State*, 289 Ga. 698, 700 (3) (715 SE2d 110) (2011). See also *White v. State*, supra at 714-715 (1) (a); *Parker v. State*, 282 Ga. 897, 899 (4) (655 SE2d 582) (2008).

Moreover, this Court has held that as long as there are sufficient facts in the felony murder count that puts the defendant on notice of the underlying felony, then a felony murder conviction is proper even if the defendant is not indicted separately for the underlying felony. *Middlebrooks v. State*, 253 Ga. 707-708 (2) (324 SE2d 192) (1985). See also *Jones v. State*, 282 Ga. 47, 49 (2) (644 SE2d 853) (2007). Count 3 of the indictment states that Appellant is accused of the offense of felony murder in that he caused the death of the victim "while in the commission of a felony, to wit: conspiracy to distribute cocaine." Therefore, not only did the indictment set forth sufficient facts of the underlying felony in the felony murder count, but it also named the predicate felony, which this Court has stated constitutes "the better method." *Middlebrooks v. State*, supra at 708 (2), fn. 2. The felony murder charge put Appellant on notice of the precise predicate offense, and, thus, in the absence of a malice murder guilty verdict, a conviction for felony murder would have been proper even though the trial court vacated the separate underlying felony count.

8. Appellant contends that the trial court erred by denying a motion for mistrial after a police officer testified that Appellant admitted to him that he sells crack, which, according to Appellant,

improperly placed his character into evidence. However, the trial court permitted the State to elicit this testimony because it was relevant to the theory of the case that Appellant and his co-conspirators assaulted, robbed, and murdered the victim in order to procure funds to participate in the illegal drug trade.

> " 'While motive is not an essential element in the proof of the crime of murder, the State is entitled to present evidence to establish that there was a motive[,] (and) evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. (Cit.)' (Cit.)" [Cit.]

*Inman v. State*, 281 Ga. 67, 71 (3) (b) (635 SE2d 125) (2006). In *Inman*, this Court upheld a trial court's decision to permit testimony regarding the appellant's previous drug offenses because the testimony was admitted to establish the appellant's motive for committing the crimes for which he was being tried. As the testimony regarding Appellant's involvement in the drug trade was also admitted for its relevance to the motive underlying the alleged crimes, the trial court was not in error for permitting its admission. See *Morgan v. State*, 276 Ga. 72, 76 (6) (575 SE2d 468) (2003); *Collins v. State*, 273 Ga. 30, 31 (2) (538 SE2d 34) (2000); *Hartman v. State*, 266 Ga. 613, 614 (2) (469 SE2d 163) (1996).

9. Appellant contends that the trial court erred by refusing to grant him a continuance of the presentence hearing and by sentencing Appellant as a recidivist.

Pursuant to OCGA § 17-10-2 (a) (1), after a verdict of guilty has been rendered by the jury in any felony case, "the judge shall dismiss the jury and shall conduct a presentence hearing . . . [and] shall hear additional evidence in extenuation, mitigation, and aggravation of punishment. . . ." In the present case, the trial judge held the presentence hearing immediately after the jury found Appellant guilty and was dismissed. Appellant, however, was not anticipating that the presentence hearing would take place immediately and thus was not prepared to introduce evidence and did not have any witnesses to testify on his behalf. He argues that the trial court erroneously denied his motion for a continuance, as he has an absolute right to a presentence hearing. However, "[w]hether a continuance should be granted for lack of preparation lies within the discretion of the trial court. [Cits.]" *Jackson v. Hopper*, 232 Ga. 419, 420 (1) (207 SE2d 58) (1974). "In this case, the trial court did not prevent [Appellant] from participating in [a presentence] hearing; the trial court merely refused to delay the hearing until such time as [Appellant] deemed appropriate." *Gibbins v. State*, 229 Ga. App. 896,

901 (7) (495 SE2d 46) (1997). See also *Jackson v. State*, 266 Ga. 308, 309 (3) (467 SE2d 495) (1996); *Scott v. State*, 213 Ga. App. 84, 88 (5) (444 SE2d 96) (1994). The trial court gave Appellant the opportunity to present evidence, introduce witnesses, and argue for mitigation of his sentence. Appellant admits that it was his error that he was not prepared for the hearing. Moreover, Appellant has " 'failed to identify specific witnesses or evidence to be offered on mitigation' " and thus has " 'failed to demonstrate any harm from the denial of the continuance.' [Cit.]" *Hooker v. State*, 278 Ga. App. 382, 388 (6) (629 SE2d 74) (2006). See also *Wilson v. State*, 250 Ga. 630, 637-638 (8) (300 SE2d 640) (1983); *Schwindler v. State*, 254 Ga. App. 579, 590 (16) (563 SE2d 154) (2002). Therefore, Appellant has not shown that the trial court abused its discretion in denying the motion for continuance.

Appellant also contends that the trial court erred in sentencing him as a recidivist due to the alleged failure of the State to inform him of his prior convictions that would be entered into evidence. See *Armstrong v. State*, 264 Ga. 237, 238 (1) (442 SE2d 759) (1994); *Gates v. State*, 229 Ga. 796, 797 (4) (194 SE2d 412) (1972). However, Appellant did not raise an objection during the presentence hearing that notice of his prior convictions was deficient, and therefore any alleged error is deemed waived. *Armstrong v. State*, supra at 239 (3). Moreover, the notice that was required to be given to Appellant was

> of all previous convictions [the State] intends to introduce at trial, to allow [Appellant] to examine [the] record to determine if [the] convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during [the] pre-sentencing phase of trial.

*Redden v. State*, 294 Ga. App. 879, 881 (1), fn. 4 (670 SE2d 552) (2008). Appellant claims that the notice with regard to his prior convictions was deficient because, in the paperwork provided to him by the State, one of the specified convictions was in someone else's name and another did not specify whether Appellant had been represented by an attorney. Appellant does not claim that he did not have notice of what convictions would be entered against him, only that the paperwork concerning these convictions had some errors. Regardless of whether the paperwork had errors, Appellant received adequate prior notice of the specific convictions that were to be used against him. It was his responsibility to determine if the convictions were valid for use as evidence and to provide any specific objections to the court. As the evidence shows, the State provided certified copies of all convictions entered into evidence, and these copies show

that Appellant was the named offender, that he was represented by counsel, and that he freely and voluntarily entered into any plea deal. Therefore, the trial court had sufficient evidence to sentence Appellant as a recidivist.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 23, 2012.

*Wayne L. Burnaine, Jeffrey R. Sliz,* for appellant.

*J. Bradley Smith, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jay C. Fisher, Assistant Attorney General, Samuel E. Skelton,* for appellee.